No. 85,553

STATE OF KANSAS, *Appellee*, v. TRAVIS T. HITT, *Appellant*.

(42 P.3d 732)

Opinion filed March 15, 2002.

*Libby K. Snider*, assistant appellate defender, argued the cause, and *Jessica R. Kunen*, chief appellate defender, was with her on the brief for appellant.

*Vernon E. Buck*, assistant county attorney, argued the cause, and *J. Marcus Goodman*, county attorney, and *Carla J. Stovall*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

SIX, J.: We revisit *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S.Ct. 2348 (2000), to decide whether the fact of a prior juvenile adjudication must be charged in the indictment and proven to a jury beyond a reasonable doubt before it can be included in a defendant's criminal history score.

Travis Hitt appeals his presumptive sentence following a plea of guilty to conspiracy to commit aggravated battery. Before the Court of Appeals, Hitt argued for the first time that his juvenile adjudications should not have been included in his criminal history. He reasoned that his juvenile adjudications were the result of pro-

ceedings in which he did not have the right to a jury trial. The Court of Appeals in an unpublished opinion affirmed the district court, deciding that Hitt's juvenile adjudications were correctly included in his Kansas Sentencing Guidelines Act (KSGA) criminal history score. See K.S.A. 2001 Supp. 21-4704.

We granted Hitt's petition for review to resolve this first impression issue. K.S.A. 20-3018(b).

We hold that Hitt's juvenile adjudications were correctly included in his KSGA criminal history score. We affirm the Court of Appeals and the district court. Hitt received a sentence within the presumptive range, the sentence is not subject to challenge on appeal, and *Apprendi* does not apply. See K.S.A. 21-4721(c)(1).

## FACTS

Hitt was charged with aggravated battery, conspiracy to commit aggravated battery, aggravated burglary, and criminal damage to property. He agreed to plead guilty to conspiracy to commit aggravated battery in exchange for the State's agreement to dismiss the remaining charges. Hitt was on a felony bond for burglary of a non-dwelling when his actions resulting in the charges here occurred. The State also agreed to remain silent on the issue of whether the sentence for the instant crime should run consecutive to or concurrent with the sentence on the burglary charge. The district court accepted Hitt's guilty plea.

Hitt's criminal history included one juvenile person felony, four juvenile nonperson felonies, one juvenile nonperson misdemeanor, and one adult nonperson felony. He did not object to the corresponding criminal history score of "C." The severity level of the crime combined with Hitt's criminal history score resulted in a presumptive prison term of 34 to 38 months. Hitt filed a motion for downward dispositional and/or durational departure. At sentencing, he asked the court to place him on probation. The district court denied Hitt's motion for departure and sentenced him to 38 months' imprisonment, to run consecutive to the sentence imposed on the burglary.

## DISCUSSION

Hitt argues that juvenile adjudications included in a criminal history score increase the penalty for a crime beyond the pre-

scribed statutory maximum. He reasons that under *Apprendi*, juvenile adjudications must be charged in the indictment and proven to a jury beyond a reasonable doubt. Because the KSGA provides that juvenile adjudications may be included in the criminal history score absent these requirements, Hitt contends the KSGA is unconstitutional on its face and as applied to his sentence.

Though Hitt fails to target a specific statute, he presumably refers to K.S.A. 21-4710(a), which provides in part:

"Criminal history categories contained in the sentencing guidelines grid for nondrug crimes . . . are based on the following types of prior convictions: . . . person felony juvenile adjudications, nonperson felony juvenile adjudications . . . person misdemeanor juvenile adjudications, nonperson class A misdemeanor juvenile adjudications . . . [and] select class B nonperson misdemeanor juvenile adjudications . . . ."

While not central to our analysis, K.S.A. 21-4709, K.S.A. 2001 Supp. 21-4711, and K.S.A. 2001 Supp. 21-4714(b)(5) also mention the use of prior juvenile adjudications in a defendant's criminal history score.

We begin our analysis by acknowledging the appropriate standard of review. A constitutional attack on a statute presents a question of law subject to unlimited review. The constitutionality of a statute is presumed. All doubts must be resolved in favor of its validity. If there is any reasonable way to construe the statute as constitutionally valid, we should do so. *State v. Heironimus*, 262 Kan. 796, 802, 941 P.2d 1356 (1997).

### Hitt's Argument

In *Apprendi*, the United States Supreme Court held: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. Hitt acknowledges that the plain language of *Apprendi* does not require that a jury confirm the existence of a prior conviction beyond a reasonable doubt before the conviction can be used to increase a sentence by elevating the criminal history score. He argues instead that juvenile adjudications are not prior convictions, and, more importantly, unlike adult convictions, juvenile ad-

judications do not result from proceedings in which the defendant has a right to a jury trial. Thus, Hitt asserts that juvenile adjudications do not come within the "prior conviction" exception to *Apprendi's* general rule.

He relies on *State v. LaMunyon*, 259 Kan. 54, 59, 911 P.2d 151 (1996), where we said: "It is well established that a juvenile adjudication is not a 'criminal conviction.'" When *LaMunyon* was decided, K.S.A. 38-1601 (Furse 1993) made clear that no "order, judgment or decree of the district court, in any proceedings under the provisions of this code, [shall] be deemed or held to import a criminal act on the part of any juvenile." In 1996, the Kansas Legislature revamped the Juvenile Offenders Code. In doing so, it amended K.S.A. 38-1601 to eliminate the "not a criminal act" language and instead, emphasized the primary goals of the newly named Juvenile Justice Code: to promote public safety, hold juvenile offenders accountable, and help all juveniles live more productively and responsibly. L. 1996, ch. 229, sec. 2. Because of the change to K.S.A. 38-1601, *LaMunyon* is less helpful in advancing Hitt's position.

Hitt's more significant argument is that *Apprendi's* concern with the right to a jury determination of factors increasing a sentence removes juvenile adjudications from the prior conviction exception because there is no right to jury trial in juvenile matters.

## *Apprendi's* Prior Conviction Exception

To understand *Apprendi's* treatment of the prior conviction exception, we must first consider *Almendarez-Torres v. United States*, 523 U.S. 224, 140 L. Ed. 2d 350, 118 S.Ct. 1219 (1998). There, the Court considered a federal statute that criminalized the return of a deported alien into the country without special permission. The statutory maximum penalty for the crime was 2 years' imprisonment. The same statute provided that if the alien in question was deported after the commission of an aggravated felony, the maximum prison term was 20 years. The issue was whether a 20-year maximum term defined a separate crime, requiring that the existence of the aggravated felony be charged in the indictment

and proven to the jury, or simply authorized an enhanced penalty under certain circumstances.

In considering the constitutional implications, the *Almendarez-Torres* Court reasoned that "the sentencing factor at issue here—recidivism—is a traditional, if not the most traditional, basis for a sentencing court's increasing an offender's sentence." 523 U.S. at 243. Further, "[c]onsistent with this tradition, the Court said long ago that a State need *not* allege a defendant's prior conviction in the indictment or information that alleges the elements of an underlying crime, even though the conviction was 'necessary to bring the case within the statute.' [Citation omitted.]" 523 U.S. at 243. *Almendarez-Torres* concluded that "to hold that the Constitution requires that recidivism be deemed an 'element' of petitioner's offense would mark an abrupt departure from a longstanding tradition of treating recidivism as 'go[ing] to the punishment only.' [Citation omitted.]" 523 U.S. at 244.

The conclusion in *Almendarez-Torres* was later put into context in *Jones v. United States*, 526 U.S. 227, 143 L. Ed. 2d 311, 119 S.Ct. 1215 (1999). *Jones* considered the federal statute criminalizing carjacking, which provided for a maximum penalty of 15 years' imprisonment, 25 years' imprisonment if serious bodily injury resulted, and up to life imprisonment if death resulted. Jones was charged and convicted of carjacking without mention of serious bodily injury. The sentencing court found by a preponderance of the evidence that the victim sustained serious bodily injury and sentenced Jones to 25 years in prison.

*Jones* concluded that the carjacking statute as written established three separate offenses by its specification of distinct elements, each of which must be charged in the indictment and proven to a jury beyond a reasonable doubt. 526 U.S. at 252. The Court distinguished *Almendarez-Torres* by explaining:

"*Almendarez-Torres* . . . stands for the proposition that not every fact expanding a penalty range must be stated in a felony indictment, the precise holding being that recidivism increasing the maximum penalty need not be so charged. But the case is not dispositive of the question here, not merely because we are concerned with the Sixth Amendment right to jury trial and not alone the rights to indictment and notice as claimed by Almendarez-Torres, but because the holding last Term

rested in substantial part on the tradition of regarding recidivism as a sentencing factor, not as an element to be set out in the indictment. The Court's repeated emphasis on the distinctive significance of recidivism leaves no question that the Court regarded that fact as potentially distinguishable for constitutional purposes from other facts that might extend the range of possible sentencing. [Citations omitted.] One basis for that possible constitutional distinctiveness is not hard to see: unlike virtually any other consideration used to enlarge the possible penalty for an offense, and certainly unlike the factor before us in this case, a prior conviction must itself have been established through procedures satisfying the fair notice, reasonable doubt, and jury trial guarantees." 526 U.S. at 248-49.

With this background we turn to *Apprendi*. The Court in *Apprendi* was not faced with the issue of whether the defendant's prior convictions could be used to increase his sentence. Rather, Apprendi challenged the use of the trial court's finding that the crime was committed with a biased purpose to enhance his sentence for possession of a firearm. In the shadow of *Jones*, Apprendi argued that the existence of a biased purpose was an element of the crime that, pursuant to the Sixth and Fourteenth Amendments to the United States Constitution, must be proven to a jury beyond a reasonable doubt. The Court agreed, concluding that other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. 530 U.S. at 490.

The *Apprendi* Court acknowledged that in *Almendarez-Torres* it had approved of the use of the fact of a prior conviction to enhance the defendant's sentence even absent a jury finding as to the existence of the conviction beyond a reasonable doubt. 530 U.S. at 488.

The pedigree of the prior conviction exception makes clear that it is rooted in (1) the historical use of recidivism as the "most traditional" factor supporting the sentencing court's increase of a criminal sentence, rather than functioning as an element of a crime to be set out in an indictment; and (2) the notion that a prior conviction, unlike any other so-called sentencing factor, is cloaked in substantial procedural safeguards.

The question becomes whether the absence of the jury trial safeguard in juvenile adjudications is enough to remove it from the narrow exception for prior convictions built into the *Apprendi* rule.

## Post-*Apprendi* Analysis

Our search for an answer to the above question leads us to *U.S. v. Tighe*, 266 F.3d 1187 (9th Cir. 2001). Tighe pled guilty to bank robbery, felon in possession of a firearm, and interstate transportation of a stolen vehicle. He was informed for the first time at the plea hearing that his criminal history may trigger the provisions of the Armed Career Criminal Act (ACCA), see 18 U.S.C. § 924(e) (2000). ACCA mandates a minimum sentence of 15 years for anyone convicted of being a felon in possession of a firearm who has three previous convictions for a violent felony or a serious drug offense. The trial court concluded that Tighe had at least three prior convictions for violent felonies, among them a juvenile adjudication, and imposed a 15-year sentence for the firearm conviction.

Tighe appealed, arguing in part that the provision for a 15-year mandatory minimum sentence rendered the ACCA unconstitutional on its face under *Apprendi*. The Ninth Circuit Court of Appeals quickly disposed of the argument, citing *Apprendi* and *Almendarez-Torres* and concluded:

"Under the current state of the law, the Constitution does not require prior convictions that increase a statutory penalty to be charged in the indictment and proved before a jury beyond a reasonable doubt. [Citations omitted.] Accordingly, we affirm the district court's holding that ACCA is constitutional on its face." 266 F.3d at 1191.

The as-applied challenge was another matter. The majority began its analysis with the admission that Tighe's argument had little surface appeal.

"At first blush, it may appear that Tighe's 1998 juvenile adjudication, which Congress has characterized as a 'prior conviction' for the purposes of ACCA, falls precisely within *Apprendi*'s exception for 'the fact of a prior conviction,' thus foreclosing Tighe's argument that the use of that adjudication at sentencing to increase his maximum penalty violated *Apprendi*. Such an analysis, however, ignores the significant constitutional differences between adult convictions and juvenile adjudications. [Citations omitted.] Neither *Apprendi*, nor *Almendarez-Torres*—the case upon which *Apprendi* relied to create the 'prior conviction' exception to its general rule—specifically addressed the unique issues that distinguish juvenile adjudications from adult convictions, such as the lack of a right to a jury trial in most juvenile adjudications." 266 F.3d at 1192-93.

After a review of *Almendarez-Torres ,Jones,* and *Apprendi,* the *Tighe* majority concluded:

"[T]he 'prior conviction' exception to *Apprendi's* general rule must be limited to prior convictions that were themselves obtained through proceedings that included the right to a jury trial and proof beyond a reasonable doubt. Juvenile adjudications that do not afford the right to a jury trial and a beyond-a-reasonable doubt burden of proof, therefore, do not fall within *Apprendi's* 'prior conviction' exception." 266 F.3d at 1194.

The *Tighe* dissent pointed out that the Ninth Circuit had previously declared the 15-year mandatory minimum sentence component of the ACCA to be a penalty enhancement. Thus, the dissent concluded that the three prior convictions were not elements of the crime and need not be included in the indictment or proven to a jury beyond a reasonable doubt. 266 F.3d at 1198. The dissent also pointed out that in a pre-*Apprendi* case, *United States v. Williams,* 891 F.2d 212 (9th Cir. 1989), *cert. denied* 494 U.S. 1037 (1990), the Ninth Circuit held that where a juvenile received all the process constitutionally due at the delinquency proceeding stage, the later use of the juvenile adjudication for a sentence enhancement was constitutionally sound. 266 F.3d at 1198-99.

More relevant to our discussion, however, is the dissent's criticism of the majority's interpretation of *Jones*. The dissent repeated an essential passage from *Jones*:

" 'One basis for that constitutional distinctiveness [of prior convictions] is not hard to see: unlike virtually any other consideration used to enlarge the possible penalty for an offense . . . a prior conviction must itself have been established through procedures satisfying the fair notice, reasonable doubt and jury trial guarantees.' " 266 F.3d at 1200 (quoting *Jones,* 526 U.S. at 249.).

The dissent then remarked:

"I do not believe the language plucked from *Jones* provides sufficient authority to overrule (albeit implicitly) this court's decision in *Williams,* nor do I think the majority's attempt to distinguish *Williams* is valid. In my view, the language in *Jones* stands for the basic proposition that Congress has the constitutional power to treat prior convictions as sentencing factors subject to a lesser standard of proof because the defendant presumably received all the process that was due when he was convicted of the predicate crime. For adults, this would indeed include the right to a jury trial. For juveniles, it does not. Extending *Jones'* logic to juvenile adjudications, when a juvenile receives all the process constitutionally due at the

juvenile stage, there is no *constitutional* problem (on which *Apprendi* focused) in using that adjudication to support a later sentencing enhancement." 266 F.3d at 1200.

## The Juvenile Justice Code

The special treatment of juvenile offenders because of age is not an inherent or constitutional right but rather results from statutory authority. *State v. Coleman*, 271 Kan. 733, 736, 26 P.3d 613 (2001). In Kansas, these rights are set out in the Juvenile Justice Code, K.S.A. 38-1601 *et seq*. A juvenile has the right to an attorney, K.S.A. 38-1606; the right to have the offense proven beyond a reasonable doubt, K.S.A. 38-1654; and the right to fair notice of the charges filed, K.S.A. 38-1612, K.S.A. 38-1622, and K.S.A. 38-1633. A panoply of additional rights are set forth in K.S.A. 38-1633, including the presumption of innocence and the rights to trial without unnecessary delay, to confront witnesses, and to testify or decline to testify.

There is, however, no right to jury trial. K.S.A. 38-1656 states:

"In all cases involving offenses committed by a juvenile which, if done by an adult, would make the person liable to be arrested and prosecuted for the commission of a felony, the judge may order that the juvenile be afforded a trial by jury. Upon the juvenile being adjudged to be a juvenile offender, the court shall proceed with sentencing."

We have held that there is no federal or state constitutional right to jury trial in juvenile proceedings. *State v. LaMunyon*, 259 Kan. 54, 62-63, 911 P.2d 151 (1996); *Findlay v. State*, 235 Kan. 462, 463-64, 681 P.2d 20 (1984). Further, K.S.A. 38-1656 does not grant a juvenile the right to request or demand a jury trial. The decision to grant a trial is entirely up to the court. The court is not required to state a reason for its decision, and the decision is not appealable. *Findlay*, 235 Kan. at 463-64, 466.

The advent of the KSGA, with its calculation of sentences based on the severity level of the crime and the defendant's criminal history score, brought into question whether juvenile adjudications could be considered in calculating criminal history. Clearly, the legislature intended it to be so, as reflected in the plain language

of K.S.A. 21-4710(a). The constitutionality of this practice was challenged in *LaMunyon*, 259 Kan. at 59-65.

*LaMunyon*

In *LaMunyon*, we acknowledged that the KSGA expressly requires inclusion of juvenile adjudications in a criminal history score. 257 Kan. at 57. Further:

"The fact that a juvenile adjudication is not a 'criminal act' has not been interpreted to mean that a juvenile adjudication can have no impact upon the sentence for a subsequent 'criminal conviction.' Considering a juvenile adjudication in calculating an offender's criminal history score under the KSGA does not turn that adjudication into a criminal act. The terms 'criminal act' and 'criminal history score' simply mean different things." 259 Kan. at 61.

We recognized that *Nichols v. United States*, 511 U.S. 738, 128 L. Ed. 2d 745, 114 S.Ct. 1921 (1994), held that an uncounseled misdemeanor conviction could be used to enhance the sentence for a subsequent offense. Further, we noted that in *State v. Delacruz*, 258 Kan. 129, 133-36, 899 P.2d 1042 (1995), we used *Nichols* to justify our conclusion that the use of an uncounseled but constitutionally sound misdemeanor conviction could be used in determining a criminal history score under the KSGA. See *LaMunyon*, 259 Kan. at 63-65.

In *LaMunyon*, we likened a nonjury juvenile adjudication to an uncounseled adult misdemeanor conviction—both obtained absent rights that did not attach to the particular type of offense. We concluded:

"Here, the defendant's juvenile adjudications were constitutional even if he had no right to a jury trial in those proceedings. Because the juvenile adjudications were not constitutionally infirm, they may be used in calculating the defendant's criminal history score under the KSGA." 259 Kan. at 65.

*LaMunyon* was decided several years before *Apprendi* and *State v. Gould*, 271 Kan. 394, 23 P.3d 801 (2001). In *Gould*, we adopted the *Apprendi* rationale to declare that the "Kansas scheme for imposing upward departure sentences, embodied in K.S.A. 2000 Supp. 21-4716, is unconstitutional on its face." 271 Kan. 394, Syl. ¶ 3. We said:

"Gould received a sentence beyond the statutory maximum based upon a court finding of certain aggravating factors found by a preponderance of the evidence. *Apprendi*, on the other hand, requires 'any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.' 530 U.S. at 490. Any other procedure 'is an unacceptable departure from the jury tradition that is an indispensable part of our criminal justice system. 530 U.S. at 497.' " 271 Kan. at 413.

## The Court of Appeals' Unpublished Decision

It is against this backdrop that the Court of Appeals faced Hitt's argument that his juvenile adjudications should not have been included in his criminal history score. The Court of Appeals first considered *Apprendi*, *Gould*, and *Almendarez-Torres*. These three were distinguished on the basis that in *Almendarez-Torres*, the defendant's prior aggravated felony convictions were held to be elements of the crime of illegal re-entry, whereas here, the issue is calculation of a criminal history score. The Court of Appeals observed that prior juvenile adjudications are not mentioned in the Kansas statute criminalizing aggravated battery, and the criminal history score is determined according to an entirely independent statute which applies to all crimes.

Second, the Court of Appeals relied on *LaMunyon* to conclude that because Hitt failed to show his juvenile adjudications were unconstitutional, the adjudications were correctly included in his criminal history score.

After the Court of Appeals' decision here, *State v. Spates*, 29 Kan. App. 2d 1089, 36 P.3d 839 (2001), and *State v. Hatt*, 30 Kan. App. 2d 84, 38 P.3d 738 (2002), were filed. *Spates'* and *Hatt's* treatment of the juvenile adjudication issue is consistent with the Court of Appeals' resolution of Hitt's claim.

## Analysis

It is clear from a survey of the available case law that there are two schools of thought in responding to Hitt's contention. The first follows the *Tighe* majority: Because juvenile offenders do not enjoy the right to a jury trial, nonjury juvenile adjudications lack the due process protections required by *Apprendi*; thus, they cannot be used to increase a defendant's sentence for a later crime. The sec-

ond follows the *Tighe* dissent: If juvenile adjudications are constitutionally sound according to the more limited set of rights afforded in juvenile proceedings, they may be used to increase a defendant's sentence for a later crime. Neither approach may be effortlessly applied to dispose of Hitt's appeal.

While the *Tighe* majority opinion is worthy of our consideration, we are not bound by its conclusions. A decision to exclude nonjury juvenile adjudications from the criminal history score, even limited to a prospective application, would have an unprecedented effect on the sentences of an untold number of criminal defendants. The practical impact of such a decision would rival and potentially exceed that of *Gould*. There, a relatively limited number of criminal defendants "in the pipeline" had received an upward departure sentence. Here, it would appear that far more defendants have a criminal history score bolstered by juvenile adjudications. To remove juvenile adjudications from the KSGA calculation would require the resentencing of many and result in lighter sentences for them and future defendants.

More importantly, in *Gould*, the dictates of *Apprendi* clearly applied to the Kansas departure statute. Here, neither *Apprendi* nor any other binding case precedent clearly or cleanly applies to the issue at hand. It is difficult to justify upending the KSGA without an unmistakable mandate from the United States Supreme Court.

We reason, first, that *Almendarez-Torres* made clear that prior convictions are the most traditional basis for a court's decision to increase a sentence. Second, *Jones*, while not directly on point, did emphasize that *Almendarez-Torres* was based in large part on the historical role of recidivism in sentencing. Third, *Apprendi* clearly carved out an exception for prior convictions. The *Apprendi* Court, while not entirely at ease with the exception, was comforted by "the certainty that procedural safeguards attached to any 'fact' of prior conviction." 530 U.S. at 488.

The *Apprendi* Court spoke in general terms of the procedural safeguards attached to a prior conviction. It did not specify *all* procedural safeguards nor did it require certain *crucial* procedural safeguards. There is no dispute that many procedural safeguards

attach to juvenile adjudications under the federal and state Constitutions and also under Kansas statutes.

As a final matter, Hitt argues in passing that prior juvenile adjudications must be charged in the indictment. Though Hitt did not properly brief the issue and it might otherwise be deemed abandoned, see *State v. Brown*, 272 Kan. 843, Syl. ¶ 1, 35 P.3d 910 (2001), it is more economical to address it here.

The indictment argument is the same whether the criminal history involves adult convictions or juvenile adjudications. We encountered and resolved the indictment argument in *State v. Ivory*, 273 Kan. 44, 41 P.3d 781, (2002). At issue in *Ivory* was whether, in light of *Apprendi*, prior adult convictions may be used as part of the criminal history score under the KSGA. We concluded that they may be included. *Ivory* controls the indictment issue here.

*Apprendi* created an exception allowing the use of a prior conviction to increase a defendant's sentence, based on the historical role of recidivism in the sentencing decision and on the procedural safeguards attached to a prior conviction. Juvenile adjudications are included within the historical cloak of recidivism and enjoy ample procedural safeguards; therefore, the *Apprendi* exception for prior convictions encompasses juvenile adjudications. Juvenile adjudications need not be charged in an indictment or proven to a jury beyond a reasonable doubt before they can be used in calculating a defendant's criminal history score under the KSGA. Hitt's arguments as to the constitutionality of the KSGA and his sentence fail.

We affirm the district court and the Court of Appeals.

DAVIS, J., not participating.

BRAZIL, S.J., assigned.