NOT DESIGNATED FOR PUBLICATION

No. 115,976

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

KENNETH FREDERICK RILEY,
*Appellant*.

MEMORANDUM OPINION

Appeal from Labette District Court; ROBERT J. FLEMING, judge. Opinion filed June 30, 2017. Affirmed.

*Peter Maharry*, of Kansas Appellate Defender Office, for appellant.

*Stephen P. Jones*, county attorney, and *Derek Schmidt*, attorney general, for appellee

Before GARDNER, P.J., PIERRON, J., and BURGESS, S.J.

*Per Curiam*:  Kenneth Frederick Riley contends that his sentence should be reduced because his criminal history score was based on juvenile adjudications which have decayed. He also asserts that the district court violated his constitutional rights to due process and a jury trial by using his juvenile adjudications to calculate his criminal history score. We disagree and affirm.

1

*Procedural and factual background*

Riley was suspected of conspiring to commit aggravated burglary and conspiring to commit theft. At the preliminary hearing, Riley's stepson testified that Riley suggested a scheme in which the stepson and some of his friends would burglarize homes. Riley acted as the ringleader by providing a gun and advice on how to conduct the burglaries. After discussing and agreeing to the burglary scheme, the stepson and other conspirators burglarized two homes. After being arrested, Riley's coconspirators implicated Riley in the burglary conspiracy. Pursuant to a plea agreement, Riley entered no contest pleas to two counts of aggravated burglary.

Riley's criminal history was initially scored as a B. Riley disputed two juvenile adjudications used to calculate his criminal history score:  A May 10, 1982, adjudication for aggravated assault and a November 14, 1986, adjudication for residential burglary. At sentencing, Riley introduced evidence that the residential burglary was actually a vehicular burglary and argued that the State could not score it as a person felony. Riley then argued that the State had failed to provide a verified journal entry for the aggravated assault conviction and that the district court could not use the prior aggravated assault conviction to calculate his criminal history score.

The State conceded that the vehicular burglary was a nonperson felony. However, the district court found that Riley had failed to meet the burden of proving that the aggravated assault did not occur. Ultimately, Riley's criminal history was scored as a D. The district court sentenced Riley to 55 months for the first count of aggravated burglary, to 34 months for the second count of aggravated burglary, and ordered the sentences to run consecutively.

Riley then filed a motion to correct an illegal sentence. The district court initially granted the motion, finding one of his juvenile adjudications had decayed so his criminal

2

history should have been scored as an E. The State filed a motion to reconsider arguing that the district court had relied on the wrong statutory provision in granting Riley's motion and that Riley's criminal history should be scored as a C. The district court then agreed with the State and reversed its decision to modify Riley's sentence. It declined, however, to resentence Riley using a criminal history score of C because the State had agreed at the sentencing hearing that Riley's score was a D. The district court also noted the State failed to object to the criminal history score at the January 14, 2013, sentencing hearing.

The district court granted the State's motion to reconsider on April 4, 2016. In 2015, the legislature amended K.S.A. 21-6810 to include a subsection which provides: "[A]mendments made to this section by this act are procedural in nature and shall be construed and applied retroactively." L. 2015, ch. 5, § 1. In 2016, the legislature again amended K.S.A. 21-6810 and expanded the scope of juvenile adjudications that decay for purposes of calculating an offender's criminal history score. L. 2016, ch. 97, § 1. Decay factor means "prior convictions that are no longer considered as part of an offender's criminal history score." K.S.A. 2016 Supp. 21-6803(e).

*Is Riley entitled to resentencing because of amendments to K.S.A. 21-6810 which expanded the scope of which juvenile adjudications decay for purposes of calculating criminal history scores?*

Riley argues that the Kansas legislature, by amending K.S.A. 21-6810, has expanded the scope of juvenile adjudications that decay for purposes of calculating his criminal history scores. He asserts that now only two categories of juvenile adjudications do not decay: offenses that would have been a class A, B, or C felony, and any "nondrug severity level 1 through 4 person felony if committed by an adult." (Citing K.S.A. 2016 Supp. 21-6810[d][3][B]). Riley contends that his prior aggravated assault adjudication has retroactively decayed because it would have been a class D felony and is a severity

3

level 7 offense under the current guidelines. Riley also argues that under K.S.A. 2016 Supp. 21-6810(d)(4)(A), any juvenile offense that would have been a class D or E felony, if committed by an adult, decays if a subsequent offense is committed after the defendant reaches the age of 25.

The State acknowledges that K.S.A. 2016 Supp. 21-6810(e) expressly provides that "amendments made to this section . . . are procedural . . . and shall be . . . applied retroactively." However, the State argues that any statutory provisions that establish criminal offenses or punishments are substantive in nature and that substantive provisions are barred from retroactive application. The State argues that "accepting K.S.A. 2016 Supp. 21-6810(e) at face value creates an absurd result" because "untold numbers of offenders with otherwise final sentences will be entitled to a criminal history score recalculation." The State asserts that the retroactivity language found in K.S.A. 2016 Supp. 21-6810(e) was a legislative response to Kansas Supreme Court precedent which modified the "Kansas criminal history classification system." The State argues that the legislature did not intend for courts to recalculate the criminal history scores of all persons with a juvenile adjudication and that a contrary interpretation would be untenable.

Our court has recently considered whether the statutory amendments at issue should be retroactively applied. In *Parker v. State*, Parker argued that he should be resentenced because his criminal history score was based on juvenile adjudications which had retroactively decayed due to the 2016 amendments to K.S.A. Supp. 21-6810. *Parker*, No. 115,267, 2017 WL 947821, at *1 (Kan. App. 2017) (unpublished opinion), *petition for rev. filed* May 4, 2017. *Parker* reasoned that the legislature did not intend to retroactively apply the decay provisions of K.S.A. 2016 Supp. 21-6810 because the legislature did not use "specific language" or provide any mechanisms to resentence offenders with criminal history scores based on juvenile adjudications. 2017 WL 947821, at *4. *Parker* noted that in the past, the legislature has provided for "conversion of pre-

4

Sentencing Guidelines Act sentences to Guideline sentences in express and limited situations." 2017 WL 947821, at *4. *Parker* found the lack of legislative guidance on resentencing offenders and the practical effect that numerous offenders would need to be resentenced as evidence that the legislature did not intend to retroactively apply the decay provisions of K.S.A. 2016 Supp. 21-6810. We find *Parker* to be persuasive and adopt its reasoning here.

"Interpretation of sentencing statutes is a question of law subject to de novo review." *State v. Collins*, 303 Kan. 472, 473-74, 362 P.3d 1098 (2015). "The most fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained." *State v. Jordan*, 303 Kan. 1017, 1019, 370 P.3d 417 (2016). Generally, statutes operate prospectively unless there is clear legislative intent to the contrary. *State v. Bernhardt*, 304 Kan. 460, 479, 372 P.3d 1161 (2016). A statutory change may be applied retroactively, however, when the change is "'"merely procedural or remedial in nature and does not prejudicially affect the substantive rights of the parties."' [Citations omitted.]" 304 Kan. at 479. A statute that defines the "'length or type of criminal punishment is substantive.'" *State v. Roseborough*, 263 Kan. 378, 381, 951 P.2d 532 (1997). When the legislature expressly provides that a statute is to be applied retroactively, it is unnecessary to engage in the substantive versus procedural analysis. See *State v. Todd*, 299 Kan. 263, 275, 323 P.3d 829 (2014).

The legislature explicitly provided that "amendments made to [K.S.A. Supp. 21-6810] are procedural in nature and shall be construed and applied retroactively." K.S.A. 2016 Supp. 21-6810(e). Therefore, it is not necessary to determine whether the decay provisions at issue are procedural or substantive. See *Todd*, 299 Kan. at 275. However, the legislative intent behind the decay amendments at issue is ambiguous because the legislature has not provided any guidance on resentencing offenders who received longer sentences due to a criminal history score based on juvenile adjudications. As *Parker* notes, "if we applied the 2016 amendments retroactively, it would entitle anyone serving

5

a sentence based on a criminal history score that included certain juvenile adjudications to be resentenced." 2017 WL 947821, at *4.

Furthermore, the legislature typically provides some guidance when it intends to retroactively affect a convicted offender's criminal liability. See *State v. Jeffries*, 304 Kan. 748, 751-53, 375 P.3d 316 (2016) (discussing statutory authority to convert sentences for criminal history scores based on convictions in other jurisdictions); *Todd*, 299 Kan. at 275-76 (discussing statutory amendment to be retroactively applied to eliminate lesser included offense of felony murder in cases pending appeal); *Roseborough*, 263 Kan. at 383-86 (discussing retroactivity provision with specific timetable and procedure for criminal sentence conversion). The 2016 amendments provide no such mechanism by which to undertake the massive task of resentencing all persons whose criminal history includes juvenile adjudications. See *Parker*, 2017 WL 947821, at *4.

The general rule is that the criminal statutes and penalties in effect at the time the criminal offense occurs are controlling. *State v. Denney*, 278 Kan. 643, 646, 101 P.3d 1257 (2004). The likely legislative intent behind the decay provisions at issue was to modify the general rule as it relates to calculating criminal history scores of offenders who committed an offense before the amendment went into effect but were sentenced afterwards. Nothing in K.S.A. 2016 Supp. 21-6810 expressly states that offenders should be resentenced if their criminal history scores were based on juvenile adjudications that would have decayed if sentenced after the 2016 amendments. It is unlikely that the legislature intended to resentence all offenders with criminal history scores based on juvenile adjudications by waiting for such offenders to file the appropriate motions to modify their sentences. Therefore, we do not construe the 2016 amendments to K.S.A. 21-6810 as a legislative mandate that requires resentencing for all offenders with a criminal history score based on juvenile adjudications. Accordingly, we find no error in the criminal history score used by the district court.

6

*Did the district court violate Riley's constitutional rights to a jury trial and due process by using Riley's juvenile adjudications to calculate his criminal history score?*

Riley acknowledges that the Kansas Supreme Court has approved the use of juvenile adjudications in calculating criminal history scores but argues that the Kansas Supreme Court is "erroneous and must be overturned." Riley argues that United States Supreme Court precedent requires any fact that increases a sentence beyond the statutory maximum to be proved beyond a reasonable doubt before a jury. Riley acknowledges, however, an exception to the general rule and admits that prior convictions based on pleas or guilty verdicts rendered by a jury may generally be used to enhance a sentence. Riley argues that his juvenile adjudications are distinguishable from other criminal convictions because they do not include a right to a jury trial. Riley relies on an Ohio case in asserting that his juvenile adjudications did not have the protections inherent in a conviction after a jury trial and that calculating his criminal history score by using his juvenile adjudications would violate his constitutional rights to due process and a jury trial. See *State v. Hand*, 149 Ohio St.3d 94, 103 at ¶ 30-31, 2016 Ohio 5504, 73 N.E.3d 448 (2016) (O'Donnell, J. dissenting), *cert. denied* 137 S. Ct. 1074 (2017).

The State points out that juvenile adjudications in Ohio are civil in nature while juvenile adjudications in Kansas are more akin to criminal proceedings. The State notes that *Hand*'s dissent acknowledges that the Ohio decision conflicts with the decisions of other jurisdictions, including Kansas. 149 Ohio St.3d at 108, ¶ 48.

In *Apprendi v. New Jersey*, the United States Supreme Court considered whether the "Due Process Clause of the Fourteenth Amendment requires that a factual determination authorizing an increase in the maximum prison sentence for an offense from 10 to 20 years be made by a jury on the basis of proof beyond a reasonable doubt." 530 U.S. 466, 469, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). *Apprendi*'s general rule is "any fact that increases the penalty for a crime beyond the prescribed statutory maximum

must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490. However, the *Apprendi* Court recognized an exception and held that a "prior conviction" may be used to enhance a sentence without having a jury decide whether the fact had been proven beyond a reasonable doubt. 530 U.S. at 490.

The constitutional challenge raised by Riley was first addressed by the Kansas Supreme Court in *State v. Hitt*, 273 Kan. 224, 42 P.3d 732 (2002). Hitt argued that under *Apprendi*, "juvenile adjudications are not prior convictions, and, more importantly, unlike adult convictions, juvenile adjudications do not result from proceedings in which the defendant has a right to a jury trial." 273 Kan. at 226-27. Furthermore, Hitt contended that because juvenile adjudications are not prior convictions, the *Apprendi* exception does not apply so his juvenile adjudications should have been submitted to a jury. 273 Kan. at 226-27. The Kansas Supreme Court disagreed and found that *Apprendi*'s prior conviction exception includes juvenile adjudications:

> "Juvenile adjudications are included within the historical cloak of recidivism and enjoy ample procedural safeguards; therefore, the *Apprendi* exception for prior convictions encompasses juvenile adjudications. Juvenile adjudications need not be . . . proven to a jury beyond a reasonable doubt before they can be used in calculating a defendant's criminal history score under the [Kansas Sentencing Guidelines Act]." 273 Kan. at 236.

In *State v. Fischer*, 288 Kan. 470, 475, 203 P.3d 1269 (2009), the Kansas Supreme Court revisited this issue and reaffirmed *Hitt*'s holding for all juvenile adjudications final on or before June 20, 2008. *Fischer* reasoned that juvenile adjudications in Kansas after June 20, 2008, are akin to adult prosecutions because juveniles adjudicated after that date have a right to a jury trial. 288 Kan. at 474-76. Thus, juvenile adjudications that become final after June 20, 2008, must be submitted to a jury and proved beyond a reasonable doubt before they may be used to calculate a criminal history score. In *State v. Waller*, 299 Kan. 707, 728-29, 328 P.3d 1111 (2014), the Kansas Supreme Court reaffirmed *Fischer* and held that juvenile adjudications that were final before June 20, 2008, could

8

be considered in calculating criminal history scores under the *Apprendi* exception. Such is the case here.

Both of Riley's juvenile adjudications were final before June 20, 2008. Riley's juvenile adjudication for aggravated assault occurred on May 10, 1982, and his juvenile adjudication for vehicular burglary occurred on November 14, 1986. Therefore, the district court did not violate Riley's constitutional rights by using Riley's juvenile adjudications to calculate his criminal history.

Affirmed.