NOT DESIGNATED FOR PUBLICATION

No. 127,815

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

EMMANUEL RASHAD WALKER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; BRETT A. WATSON, judge. Oral argument held October 14, 2025. Opinion filed February 6, 2026. Affirmed.

*Peter Maharry*, of Kansas Appellate Defender Office, for appellant.

*Carolyn A. Smith*, assistant deputy district attorney, *Michael F. Kagay*, district attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before MALONE, P.J., COBLE, J., and SEAN M.A. HATFIELD, District Judge, assigned.

PER CURIAM: Emmanuel Rashad Walker was convicted of intentional second-degree murder and criminal possession of a firearm for shooting and killing Kirk Sexton during an argument. Walker raises three issues on appeal: (1) Whether the district court erred in instructing the jury that Walker was not entitled to use force in self-defense if he was the initial aggressor; (2) whether the district court erred in failing to *sua sponte* instruct the jury on involuntary manslaughter—imperfect self-defense as a lesser-included offense; and (3) whether the district court erred in counting Walker's 2004

1

juvenile adjudication for aggravated robbery as a person felony in determining his criminal history at sentencing.

On review, we find the district court did not err in giving the initial aggressor instruction because the instruction was legally and factually appropriate. We also find that an imperfect self-defense involuntary manslaughter instruction would have been legally and factually appropriate, but we are unpersuaded that the failure to give the instruction was clearly erroneous. Lastly, bound by precedent, we find no error in the district court's criminal history determination. Walker's conviction and sentence are affirmed.

FACTUAL AND PROCEDURAL BACKGROUND

Emmanuel Rashad Walker shot and killed Kirk Sexton in July 2022. Walker and Sexton had a contentious relationship due to Sexton's disapproval of Walker's relationship with Sexton's sister, Arleta Murray. Walker had a previous confrontation with Sexton and Sexton's Mother, Linda Brown, about a year prior to the shooting. According to Walker, in the course of this earlier confrontation, Linda pulled a gun on him, Sexton hit Walker with a stick, and Sexton threatened to kill Walker. Afterwards, Walker avoided Murray for roughly a year but ended up staying at her apartment due to a loss of housing a few days prior to the shooting.

On the night of the shooting, Sexton came to the door of Murray's apartment and began knocking while Walker was inside. Walker opened the door and saw Sexton walking away. When Walker stepped outside, Sexton began walking back towards him. According to Walker, Sexton balled up his fists and lowered his shoulder, bumping into Walker as he approached. The two began arguing, during which Sexton allegedly threatened to kill Walker if he did not leave and/or kill Walker if he returned. Walker tried to ignore Sexton and walk away, but Sexton persisted.

2

Walker eventually sat on a stone ledge waiting for another woman, Kayla Auchard, to come out of Murray's apartment so they could leave. Sexton continued arguing with Walker and came closer to him as Walker sat on the ledge. According to Walker, Sexton began shouting at him and Walker asked Sexton to back away, but Sexton did not, and instead lunged at Walker. At that time, Walker drew his gun and fired a shot, which he claimed he only intended as a warning shot, but the bullet struck Sexton in the neck. Another resident of the apartment complex, Stacy Ripple, was outside and told Walker she was going to call 911. Walker got his keys and drove away with Auchard.

The State charged Walker with intentional first-degree murder and criminal possession of a firearm. The matter proceeded to a jury trial. At the outset of trial, Walker pleaded guilty to criminal possession of a firearm. The jury subsequently heard evidence related to the first-degree murder charge. Most relevant to the issues on appeal, Stacy Ripple's testimony told a different story than Walker's.

Ripple said she observed Walker and Sexton arguing but it appeared relatively calm and neither was behaving overly aggressively. Ripple did not see Sexton with a weapon. Ripple observed Walker sitting on the retaining wall during the argument with Sexton standing nearby. Ripple heard Walker tell Sexton: "[M]an, if you don't leave me alone, I'm going to shoot you." Sexton responded, "[W]ell, then do it," and Walker shot him. Ripple called 911 and gave statements to the responding officers at the scene as well as a subsequent interview at the law enforcement center.

After the close of evidence, the district court instructed the jury on intentional first-degree murder. It also instructed the jury on the lesser-included offenses of: intentional second-degree murder; reckless second-degree murder; voluntary manslaughter based on sudden quarrel or imperfect self-defense; and reckless involuntary manslaughter. The district court also instructed the jury on self-defense, as Walker

3

claimed his actions were in self-defense. In this instruction, the district court instructed the jury that a person is not entitled to use force in self-defense if that person was the initial aggressor.

The jury found Walker guilty of the lesser-included offense of intentional second-degree murder. The district court sentenced Walker to 618 months' imprisonment for second-degree murder with a consecutive sentence of 9 months' imprisonment for criminal possession of a firearm. In determining Walker's sentence, the district court found Walker was a criminal history category B. That determination was based in part on a 2004 juvenile adjudication for aggravated robbery which was counted as a person felony.

Walker timely appealed.

ANALYSIS

I.    WALKER'S CLAIMS OF JURY INSTRUCTION ERROR ARE UNPERSUASIVE.

Walker's first two claims on appeal relate to alleged jury instruction errors. For our purposes, we address them collectively as the applicable legal principles for reviewing each claim are largely the same.

Appellate courts follow a three-step process in reviewing claims of jury instruction error:  (1) determine whether the court has jurisdiction to consider the claim and whether it was preserved below; (2) consider the merits of the claim to determine whether error occurred; and (3) assess whether any error requires reversal. *State v. Hollins*, 320 Kan. 240, 242, 564 P.3d 778 (2025).

"At the second step, appellate courts consider whether the instruction was legally and factually appropriate, using an unlimited standard of review of the entire record." *Hollins*, 320 Kan. at 242. In determining whether an instruction was factually appropriate, courts must determine whether there was sufficient evidence, viewed in the light most favorable to the defendant or the requesting party, that would have supported the instruction. See *State v. Mendez*, 319 Kan. 718, 727, 559 P.3d 792 (2024).

"Whether a party has preserved a jury instruction issue affects the appellate court's reversibility inquiry at the third step." *State v. Peters*, 319 Kan. 492, 515, 555 P.3d 1134 (2024). When a party fails to object to a jury instruction before the district court, an appellate court reviews the instruction to determine if it was clearly erroneous. K.S.A. 22-3414(3).

> "For a jury instruction to be clearly erroneous, the instruction must be legally or factually inappropriate and the court must be firmly convinced the jury would have reached a different verdict if the erroneous instruction had not been given. The party claiming clear error has the burden to show both error and prejudice." *Mendez*, 319 Kan. at 727-28.

If the challenging party preserved the issue below, an appellate court applies one of two harmless error tests. If the instructional error impacts a constitutional right, an appellate court assesses whether the error was harmless under the federal constitutional harmless error standard, which is whether there was no reasonable possibility that the error contributed to the verdict. When no constitutional right is impacted, an appellate court assesses whether there is no reasonable probability the error affected the trial's outcome in light of the entire record. *State v. Holley*, 313 Kan. 249, 256-57, 485 P.3d 614 (2021).

5

*Initial Aggressor Instruction*

Walker first argues the district court erred in instructing the jury that an initial aggressor is not entitled to use force in self-defense. The State did not request this instruction but the district court felt it should be given. Wallker objected. The district court overruled the objection and instructed in relevant part:

"A person who initially provokes the use of force against himself is not permitted to use force to defend himself unless:

"The person reasonably believes he is in present danger of death or great bodily harm and he has used every reasonable means of escape—to escape such danger other than the use of physical force which is likely to cause death or great bodily harm to the other person; or

"[T]he person has in good faith withdrawn from physical contact with the other person and indicates clearly to the other person he desires to withdraw and stop the use of force, but the other person continues or resumes the use of force."

Walker and the State agree the instruction was legally appropriate. Indeed, the instruction was legally appropriate as it correctly reflected the statutory language of K.S.A. 21-5226(c) (statutory claims of self-defense do not apply to a person who "initially provokes the use of any force against such person or another"). However, Walker argues it was not factually appropriate.

Walker asserts his testimony reflected Sexton was the initial aggressor based on his account of the argument between himself and Sexton. Specifically, Walker asserts Sexton started the argument, bumped into him, and continued to bother him despite Walker asking Sexton to leave him alone. In other words, Walker claims Sexton was the initial aggressor because Sexton allegedly started an argument and used non-deadly force in the course thereof. But Walker's argument would have this court review the evidence through the wrong lens. The pertinent question is whether the evidence, viewed in the

6

light most favorable to the requesting party or party benefiting from the instruction, would support giving the instruction. See *Mendez*, 319 Kan. at 727.

Here, Ripple testified she observed the argument between Walker and Sexton but it remained verbal and was generally calm. Neither party, in Ripple's account of the events, used or threatened to use force until Walker told Sexton he would shoot Sexton if he did not leave Walker alone. Only at that point did Sexton step closer towards Walker. But Ripple did not observe a weapon or anything dangerous in Sexton's hands. Nor did Ripple's testimony indicate anything reasonably suggesting Sexton used or attempted to use non-deadly force against Walker. Viewed in a light most favorable to the State, the evidence supported the district court's decision to give the instruction, and we find it was factually appropriate.

*Imperfect Self-Defense*

Walker next argues the district court erred in failing to instruct the jury on involuntary manslaughter through imperfect self-defense. He acknowledges he did not request the instruction; therefore, this court reviews the issue for clear error. See K.S.A. 22-3414(3). In order to demonstrate clear error, Walker must firmly convince us that the outcome of trial would have been different if the jury had been given the instruction. *Mendez*, 319 Kan. at 727-28. But first, we consider whether the instruction would have been legally and factually appropriate.

The parties agree the instruction would have been legally appropriate because involuntary manslaughter is a lesser-included offense of first-degree murder. See *State v. Pulliam*, 308 Kan. 1354, 1362, 430 P.3d 39 (2018). The instruction also would have been factually appropriate given the facts and circumstances of the case. Walker claimed he used force in self-defense. But the jury rejected his argument. As previously noted, the jury could have concluded Walker used more force than what was warranted given

7

Sexton was not using deadly force, or could have concluded Walker's use of force might have been lawful but for him being the initial aggressor. In either event, this evidence could reflect Walker subjectively believed his use of force was warranted even though such belief was objectively unreasonable. So, the instruction would have been both legally and factually appropriate and should have been given.

Still, we are not firmly convinced the jury would have convicted him of involuntary manslaughter had the instruction been given. There are facts and circumstances reflected by the trial testimony that undermine a finding that Walker subjectively believed his use of force was justified. Walker left the area when Ripple said she was going to call 911 and was only located months later when he was arrested in Pennsylvania. Although Walker contends he subjectively believed his use of force was lawful, the fact he did not stay at the scene to speak with law enforcement or timely contact the authorities to explain his actions undermines this claim. Moreover, Ripple's testimony generally refuted Walker's account of Sexton acting aggressively. Based on this testimony and Walker's actions after shooting Sexton, we are not firmly convinced that the jury's verdict would have been different and the failure to instruct was not clear error.

II.    THE DISTRICT COURT DID NOT ERR IN DETERMINING WALKER'S CRIMINAL HISTORY.

Finally, Walker argues it was improper for the district court to use his 2004 juvenile adjudication for aggravated robbery in determining his criminal history to establish his sentence because he did not have a right to a jury trial at the time of his adjudication. Walker acknowledges this argument was rejected by our Supreme Court in *State v. Hitt*, 273 Kan. 224, 236, 42 P.3d 732 (2002), but asserts *Hitt* was wrongly decided. Although he raises several arguments to that effect, we are duty-bound to follow Kansas Supreme Court precedent absent some indication our Supreme Court intends to

8

depart from its position. *State v. Patton*, 315 Kan. 1, 16, 503 P.3d 1022 (2022). Because there is no indication our Supreme Court intends to depart from its position in *Hitt*, we cannot find the use of Walker's juvenile adjudication was improper. The district court did not err in determining Walker's criminal history at sentencing.

Affirmed.