No. 77,718

STATE OF KANSAS, *Appellant*, v. VALJEAN ROSEBOROUGH, *Appellee.*
(951 P.2d 532)

Opinion filed December 12, 1997.

*Charles R. Reimer*, assistant district attorney, argued the cause, and *Nola Foulston*, district attorney, and *Carla J. Stovall*, attorney general, were with him on the brief for appellant.

*James Brent Getty*, assistant appellate defender, argued the cause, and *Lisa Nathanson*, assistant appellate defender, and *Jessica R. Kunen*, chief appellate defender, were with him on the brief for appellee.

The opinion of the court was delivered by

WAHL, J.: The State appeals, on a question reserved, the trial court's retroactive application of the 1996 amendments to K.S.A. 21-4705 of the Kansas Sentencing Guidelines Act (KSGA) to an offender who committed crimes and was sentenced prior to July 1, 1993, for the purposes of determining eligibility for sentence conversion.

Defendant, Valjean Roseborough, was convicted of and sentenced for three crimes, all prior to 1993. In Case No. 89-CR-648, Roseborough was convicted in Sedgwick County of two counts of forgery and received a suspended sentence. After the district court found Roseborough had violated the terms of his suspended sentence, the district court revoked the suspension and imposed a 1- to 2-year sentence on each of the forgery counts. In Case No. 90-CR-994, Roseborough was convicted of one count of cocaine possession and again received a suspended sentence which was also revoked and a 3- to 10-year sentence imposed. In Case No. 91-CR-878, Roseborough was convicted of cocaine possession. After revoking Roseborough's suspended sentence for this third crime, the district court imposed a 3- to 10-year sentence.

On November 30, 1993, the Department of Corrections issued a sentencing guidelines report pursuant to K.S.A. 21-4724 which determined Roseborough's controlling severity level was level 4 drug for his conviction of cocaine possession in 91-CR-878. The report also determined Roseborough's criminal history included another nonperson possession of cocaine conviction in 90-CR-994 and two nonperson forgery convictions in 89-CR-648. Based on a resulting criminal history score of F, the report concluded Roseborough was ineligible for retroactive sentencing conversion under the KSGA, and a sentence of 3 to 10 years' imprisonment was imposed.

On August 15, 1996, Roseborough moved for conversion of his sentences, arguing he was entitled to retroactive conversion based upon the 1996 amendments to K.S.A. 21-4705, which added border boxes to the drug sentencing guidelines. In the alternative, he argued that if the amendments were not retroactive, an equal protection violation occurred if some, but not all, inmates falling into border boxes were eligible for sentence conversion.

A hearing on the motion for conversion was held on August 23, 1996, and the district court granted Roseborough's motion converting his sentence to a controlling sentence of 42 months to be followed by 2 years of post-release supervision. The court stated:

"The Court makes these findings based upon the position that due to the recent amendments to the Kansas Sentencing Drug Grid which adds border boxes, the Defendant would fall under border box 4-F. The Court further adopts the defense's position that to not grant conversion to the Defendant in this case would violate the principles of equal protection under the law in that similarly situated defendants would be treated differently if the Court were to do otherwise."

The State appealed this finding pursuant to K.S.A. 22-3602(b)(3). An appeal on a question reserved is permitted to provide an answer which will aid in the correct and uniform administration of the criminal law in this state. This court will not entertain a question reserved merely to demonstrate errors of a trial court in rulings adverse to the State. Questions reserved generally presuppose that the case at hand has concluded but that an answer to an issue of statewide importance is necessary for proper disposition of future cases. *State v. Roderick*, 259 Kan. 109, Syl. ¶ 1, 911 P.2d 159 (1996). We agree that the State's question reserved is one of statewide interest.

We are again required to interpret the provisions of the KSGA, K.S.A. 21-4701 *et seq.* Interpretation of a statute is a question of law, and our review is unlimited. *State v. Roderick*, 259 Kan. at 110.

The 1996 amendment to the KSGA added optional nonprison time to the drug sentencing grid. L. 1996, ch. 258, § 11. K.S.A. 1996 Supp. 21-4705 establishes the grid and presumptive dispositions for drug crimes and provides that the sentencing court may impose an optional nonprison sentence if the court makes specified findings concerning the availability of treatment for the defendant.

This amendment to K.S.A. 21-4705 added border boxes for drug offenses classified in grid blocks 3-E, 3-F, 3-G, 3-H, 3-I, 4-E, and 4-F and repealed the former small quantity of marijuana provision under the prior subsection (c) of K.S.A. 21-4705. Prior to the 1996 amendment, the designated grid boxes provided for a presumptive imprisonment sentence. After the amendment, the border boxes

provided for an optional nonprison sentence if specific findings were made by the trial court.

Roseborough acknowledges that this court determined in *State v. Ford*, 262 Kan. 206, 936 P.2d 255 (1997), that the 1996 amendments to the KSGA are substantive and apply prospectively. In *Ford*, the defendant was convicted of one count of conspiracy to deliver marijuana and was sentenced to imprisonment for 18 months in March 1996, prior to the effective date of the 1996 amendments. The journal entry showed the criminal history classification used to calculate Ford's sentence to be F. The 3-F block in the drug grid provided a range of months from 23 to 24 to 26. K.S.A. 21-4705(a). The presumptive guidelines sentence, according to the journal entry, was 23 to 26 months " 'minus 6 months for conspiracy.' " 262 Kan. at 207. Thus, the court sentenced the defendant to serve 18 months' imprisonment.

When K.S.A. 21-4705(a) was amended effective July 1, 1996, the range of months in the 3-F block on the drug grid remained the same, but the designation of presumptive imprisonment was changed to that of a border box with the option of a nonprison sentence. K.S.A. 1996 Supp. 21-4705(a). In contending the amended drug grid should be applied retroactively, Ford relied upon language in K.S.A. 21-4705(a) which provided: "For the purpose of sentencing, the following sentencing guidelines grid for drug crimes shall be applied in felony cases under the uniform controlled substances act for crimes committed on or after July 1, 1993." Since Ford had committed the crime after July 1, 1993, she argued the 1996 amendments should be applied to her case. This court, however, held the statute should not be applied retroactively because it is substantive and contains no express retroactive provision, stating:

"It is a fundamental rule of statutory construction that a statute operates prospectively unless its language clearly indicates that the legislature intended it to operate retroactively. *State v. Sutherland*, 248 Kan. 96, Syl. ¶ 4, 804 P.2d 970 (1991). An exception to the rule has been recognized for statutory change that is merely procedural or remedial in nature, but that exception has no application in the present case because a statute that defines the length or type of criminal punishment is substantive. 248 Kan. at 106.

"In *Sutherland*, the court stated: 'The legislature is aware of this court's established rules of statutory construction. The legislature is aware, and has, on many occasions, used specific language to clearly set forth whether a statute is to be applied prospectively or retrospectively.' 248 Kan. at 106. One of the occasions on which the legislature expressly provided for retroactive application was in enacting the Kansas Sentencing Guidelines Act (Act) in 1993. K.S.A. 21-4701 *et seq.* At that time, the legislature prefaced the grids for nondrug and drug crimes with the directive that they 'shall be applied in felony cases for crimes committed on or after July 1, 1993.' K.S.A. 21-4704(a); see K.S.A. 21-4705(a). In another section of the Act, K.S.A. 21-4724, the legislature prescribed when and how the guidelines were to be applied to persons who committed crimes prior to July 1, 1993." 262 Kan. at 208.

The *Ford* court determined that the language in K.S.A. 21-4705(a) established that crimes committed on or after July 1, 1993, would be punished according to the sentencing guidelines.

"Hence, if the legislature had changed the date in the language prefacing the drug grid to coincide with the effective date of the 1996 amendment, the resulting provision might have been construed to restrict application of the sentencing guidelines to crimes committed on or after July 1, 1996. By not changing the date in K.S.A. 1996 Supp. 21-4705(a), the legislature maintained July 1, 1993, as the date on or after which a crime had to be committed in order for the sentencing guidelines to govern punishment." 262 Kan. at 209.

The *Ford* court concluded that the 1996 amendments to K.S.A. 21-4705 must be applied prospectively and did not apply to Ford.

More recently, this court again considered the 1996 amendments to the KSGA in *State v. Reason,* 263 Kan. 405, 951 P.2d 538 (1997). In *Reason,* the crimes were committed on June 14, 1995, but sentencing was delayed until August 30, 1996. Reason's criminal history category was G and his crime was a drug severity level 3. The pre-July 1, 1996, version of K.S.A. 21-4705(a) showed a presumptive imprisonment sentence range of 20 to 23 months. Under the July 1, 1996, amendment, the same severity level crime and criminal history category showed a border box sentence range of 20 to 23 months, but for border box crimes the district court also had an optional nonimprisonment sentence choice upon making certain findings on the record pertaining to available treatment. Reason tried to distinguish *Ford* because Ford was sentenced before the 1996 amendments became effective and Reason was sen-

tenced afterward. This court found *Ford* to be controlling, holding the 1996 amendments to K.S.A. 21-4705 to be substantive amendments with only prospective application. This court held, in applying K.S.A. 21-4705, that "the critical date is the date of the crime, not the sentencing date, absent express legislative intent to the contrary." 263 Kan. at 417.

Roseborough attempts to distinguish his case from *Ford* by arguing that the retroactive provision of the sentencing guidelines applies the 1996 amendments retroactively for inmates convicted prior to 1993, whereas Ford argued that the 1996 amendments, standing alone, applied retroactively to anyone sentenced after July 1, 1993. It is Roseborough's position that language in K.S.A. 21-4724(b)(1) supports his argument that the 1996 border box sentences should be applied retroactively to him. K.S.A. 21-4724, the limited retroactivity provision of the KSGA enacted in 1993, provides:

"(a) The sentencing grid for nondrug crimes as provided in K.S.A. 21-4704 and the sentencing grid for drug crimes as provided in K.S.A. 21-4705 shall be applied for crimes committed before July 1, 1993, as provided in this section.

"(b)(1) Except as provided in subsection (d), persons who committed crimes which would be classified in a presumptive nonimprisonment grid block on either sentencing grid, in grid blocks 5-H, 5-I or 6-G of the nondrug grid or in grid blocks 3-H or 3-I of the drug grid, pursuant to the provisions of subsection (c) of K.S.A. 21-4705 *and amendments thereto*, if sentenced pursuant to the Kansas sentencing guidelines act, and were sentenced prior to July 1, 1993, shall have their sentences modified according to the provision specified in the Kansas sentencing guidelines act." (Emphasis added.)

Roseborough argues that when K.S.A. 21-4724(b)(1) provides sentence conversion to persons who committed crimes which would be classified "in a presumptive nonimprisonment grid block on either sentencing grid . . . pursuant to the provision of subsection (c) of K.S.A. 21-4705 *and amendments thereto*" (emphasis added), it is a clear legislative expression of intent that all post-1993 amendments to K.S.A. 21-4705, including the 1996 border box amendments, are to be applied retroactively. We disagree.

The "and amendments thereto" language relied upon by Roseborough is not an expression of legislative intent that all future amendments to the retroactivity provision of K.S.A. 21-4724(b) au-

tomatically apply to Roseborough. We note that the preamble language of the 1996 amendments to K.S.A. 21-4705 states that it applies only to crimes committed *after* July 1, 1993. Further, K.S.A. 21-4723 provides that, except as provided in K.S.A. 21-4724, all prosecutions of prior crimes shall be punished "under the laws existing at the time such crimes were committed." In addition, K.S.A. 21-4724, with the limited retroactivity provision enacted in 1993, established a very specific timetable and procedure for sentence conversion, including the issuing of sentencing guidelines reports by the Department of Corrections followed by the opportunity of a court hearing, all to be accomplished in 1993.

K.S.A. 21-4724(b)(1) states with regard to drug crimes that only persons who have committed crimes which would be classified in drug grid blocks 3-H, 3-I, and presumptive nonimprisonment grid blocks are entitled to retroactive conversion of their sentences. Reading this language in the context of the 1993 amendment, the statute refers only to the 1993 version of the drug grid. The 1996 amendments did not provide for new implementation procedures or new dates to effect any new sentence conversions. This indicates that the legislature did not contemplate any additional retroactive conversions under the 1996 amendments. The legislature was certainly aware of the various provisions of K.S.A. 21-4705 and K.S.A. 21-4724 which limit retroactivity when it enacted the 1996 amendments and chose not to amend the other portions of the statute.

The legislature has the exclusive role of providing for the punishment of convicted criminals. *State v. Reed*, 248 Kan. 792, 798, 811 P.2d 1163 (1991). The legislative power to punish convicted criminals is controlled only by the Constitutions of the United States and of the State of Kansas. *State v. Keeley*, 236 Kan. 555, 560, 694 P.2d 422 (1985). Because the legislature did not amend the relevant statutes to express clearly its intention that all inmates in Roseborough's situation are to be affected by the 1996 amendments to K.S.A. 21-4724(b)(1), we conclude there was no intent to do so. Our decisions in *Ford* and *Reason* control this case, and Roseborough's attempt to distinguish his situation fails.

Roseborough also raises an equal protection argument, which the district court adopted. The United States Supreme Court has

described the concept of "equal protection" as one which "emphasizes disparity in treatment by a State between classes of individuals whose situations are arguably indistinguishable." *State ex rel. Schneider v. Liggett*, 223 Kan. 610, 613, 576 P.2d 221 (1978) (quoting *Ross v. Moffitt*, 417 U.S. 600, 609, 41 L. Ed. 2d 341, 94 S. Ct. 2437 [1974]). "[A] statute is presumed constitutional and all doubts must be resolved in favor of its validity. If there is any reasonable way to construe a statute as constitutionally valid, the court must do so. A statute must clearly violate the constitution before it may be struck down." *Boatright v. Kansas Racing Comm'n*, 251 Kan. 240, 243, 834 P.2d 368 (1992).

Under the rational basis test adopted by this court in *Chiles v. State*, 254 Kan. 888, 869 P.2d 707, *cert. denied* 513 U.S. 850 (1994), in reviewing an equal protection challenge to the KSGA, the classification must bear a rational relationship to the legislative objective. As we stated in *Chiles*:

"With a rational basis review, relevance is the only relationship required between the classification and the objective. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. Insofar as the objective is concerned, a statutory discrimination will not be set aside if any set of facts reasonably may be conceived to justify it. The legislature's purpose in creating the classification need not be established. The classification must, however, bear a rational relationship to a legitimate objective. The rational basis test contains two substantive limitations on legislative choice: (1) legislative enactments must implicate legitimate goals, and (2) the means chosen by the legislature must bear a rational relationship to those goals. These limitations amount to a prescription that all persons similarly situated should be treated alike." 254 Kan. at 895.

Roseborough notes that prior to the 1996 amendments, the drug grid contained no border boxes, but that K.S.A. 21-4724 provided for retroactive sentence conversion if the offender fell into drug grid boxes 3-H or 3-I and satisfied the small quantity marijuana exception. K.S.A. 21-4705(c); K.S.A. 21-4724(b). Roseborough observes that while the legislature repealed the small quantity marijuana exception and established new border boxes in 1996, the legislature did not amend the retroactive provisions of K.S.A. 21-4724(b) to reflect this change but continued to limit the retroactive provision to 3-H or 3-I categories on the drug grid. He states that

this results in inmates convicted of preguideline crimes now classified in five of seven border boxes being ineligible for retroactive conversion of their sentences. Roseborough maintains that not to apply the 1996 amendments retroactively to him (he would fall into category 4-F on the new grid) in the sentencing conversion context results in a statutory classification that provides the benefits of retroactivity to some but not to all border box sentences. He argues that to provide the benefits of retroactivity to some border box sentences while denying the same benefits to other border box cases is not rational and cannot further the objective of reducing the prison population without risking public safety by converting the sentences of less serious offenders and requiring more serious offenders to serve their original sentences.

In response, we would simply point out that the 1996 amendments to the drug grid do not apply to Roseborough. He was sentenced in accordance with the law applicable at the time of his crime. See *State v. Riley*, 259 Kan. 774, Syl. ¶ 3, 915 P.2d 774 (1996). Roseborough has no equal protection claim because he is not similarly situated with persons affected by the 1996 amendments. As long as Roseborough is treated the same as other offenders who were sentenced under the applicable law in effect at the time they committed their crimes, there is no constitutional violation. Extending retroactive conversion to some offenders by the 1993 legislature was an act of grace. Offenders are not entitled to automatic conversion of their sentences by the passage of every change in the sentencing laws.

The legislature has the power to change the penalty for criminal offenses and to apply those lessened or heightened penalties prospectively to criminal acts committed on or after the effective date of the new changes. *State v. Sutherland*, 248 Kan. 96, 107-08, 804 P.2d 970 (1991). Such changes do not create equal protection claims for offenders who were properly sentenced under previous law.

In *Chiles*, this court found:

"In looking at the [1993] limited retroactivity provision and the sentencing grids, it is apparent that the legislature intended to give the benefits of retroactivity only to those prisoners who had been convicted of less serious offenses. The legisla-

ture's objective was to achieve the reduction of prison overcrowding by the early release of some prisoners while concomitantly promoting the public safety by limiting the early release to less serious offenders. It is reasonable to assume that the interest of the public safety of the community underlay the legislative decision to limit the scope of the retroactivity provision to less serious offenders. The limited retroactivity provision is reasonable in relation to its subject, was adopted in the interest of the community, and is not violative of [equal protection or] due process." 254 Kan. at 903.

The legislature did not intend to guarantee any particular offender that his or her sentence would be subject to modification and conversion after 1993. Presumably, the prison overcrowding which existed in 1993 has been somewhat alleviated by the sentence conversions and the application of optional nonimprisonment granted to offenders in 1993. Roseborough's claim of an equal protection violation is without merit.

· We sustain the State's appeal on a question reserved. We reverse the judgment of the trial court.

LOCKETT, J., not participating.

RICHARD W. WAHL, Senior Judge, assigned.