IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 124,851

STATE OF KANSAS,
*Appellee,*

v.

MARK HOPKINS II,
*Appellant.*

SYLLABUS BY THE COURT

A defendant is entitled to jail time credit against his or her sentence for all time spent incarcerated while the defendant's case was pending disposition. The contrary holding of *Campbell v. State*, 223 Kan. 528, 528-31, 575 P.2d 524 (1978), is overruled.

Appeal from Cherokee District Court; ROBERT J. FLEMING, judge. Submitted without oral argument February 3, 2023. Opinion filed October 20, 2023. Affirmed in part, reversed in part, and remanded with directions.

*Debra J. Wilson*, of Capital Appeals and Conflicts Office, was on the briefs for appellant.

*Natalie Chalmers*, assistant solicitor general, *Derek Schmidt*, former attorney general, and *Kris W. Kobach*, attorney general, were on the briefs for appellee.

The opinion of the court was delivered by

STEGALL, J.: Mark Hopkins II was sentenced to life imprisonment without the possibility of parole for 50 years after being convicted of murdering two people in 2020. He spent 572 days in jail awaiting sentencing. At sentencing, the district court denied Hopkins credit against his sentence for the time spent in jail based on this court's precedent which has, until now, required the sentencing judge to only award a defendant

1

credit for time spent in custody "solely" on the charge for which he or she is being sentenced. See, e.g., *State v. Smith*, 309 Kan. 977, 981, 441 P.3d 1041 (2019); *State v. Harper*, 275 Kan. 888, 890, 69 P.3d 1105 (2003); *Campbell v. State*, 223 Kan. 528, 528-31, 575 P.2d 524 (1978). Because history demonstrates confusion, difficulty, and inconsistency in the application of this court-made rule over the last 45 years, we have no difficulty revisiting and revising this rule to reflect the plain language of the statute. As such, today we hold that the award of credit under K.S.A. 2022 Supp. 21-6615(a) is not limited to time spent "solely" in custody for the charge for which the defendant is being sentenced.

FACTS

In June 2020, Hopkins and a codefendant met up with two individuals in rural Cherokee County, Kansas. The two victims believed they were meeting to obtain methamphetamine from Hopkins; however, Hopkins thought the victims were acting as law enforcement informants against him. So, Hopkins decided to kill the two. He zip-tied a flashlight to the barrel of his 9 mm rifle and shot each of them in the head. Hopkins and the codefendant left the scene in separate vehicles, and Hopkins fled to Oklahoma. Oklahoma law enforcement apprehended Hopkins after locating him asleep in his car. Hopkins eventually confessed to committing the murders.

Hopkins waived extradition, was served with the arrest warrant, and was then held without bond in the Cherokee County Jail. While he was in jail, the State filed a motion to revoke probation in a prior theft case from 2018. This motion remained pending until its eventual dismissal as part of a plea agreement in the murder case.

In May 2021, Hopkins escaped from the Cherokee County Jail. He remained at large for four days before being captured. Upon his return to jail, the State filed two new charges against Hopkins relating to the escape from custody.

2

In November 2021, Hopkins entered a plea bargain with the State. Hopkins agreed to plead guilty to two counts of premeditated first-degree murder and the State agreed to withdraw the pending Motion to Revoke Probation in the theft case; dismiss the escape charges in Cherokee County; and dismiss an additional pending Labette County case.

Before sentencing, Hopkins filed a motion for durational departure sentences, requesting that the court impose sentences of 25 to life. The motion was accompanied by information about Hopkins' background and a psychological evaluation. The motion contained lengthy descriptions of Hopkins' troubled, dysfunctional, and abusive childhood, his abuse of a dizzying array of drugs and substances beginning at a young age, and his struggles with ADHD and other developmental disorders.

In further support of that motion, Hopkins presented the testimony of Dr. Robert McCaffrey—a New York-based neuropsychologist—at sentencing in December 2021. Dr. McCaffrey did not evaluate or test Hopkins; he merely reviewed his records. Dr. McCaffrey testified that in his long experience he had never encountered an individual that has used the variety and the extent of substances Hopkins abused; noting that beginning substance abuse at an early age would disrupt normal neuropsychological cognitive functions. Of particular concern to Dr. McCaffrey was Hopkins' use of aerosols ("huffing"), testifying that adolescents who regularly abuse aerosols "are referred to as having swiss cheese brains" because it "is very, very toxic."

Based on Hopkins' history, Dr. McCaffrey opined that he could anticipate Hopkins' executive functioning being impaired. But Dr. McCaffrey also agreed that several of the red flags he observed in Hopkins' record—including the disordered family life and long-term substance abuse—were common in society, and made clear that he was "absolutely not" opining that Hopkins was incapable of premeditating murder.

3

The State then presented victim impact statements from family members, which included testimony about one of the victim's three children being left without their father.

The district court considered and denied Hopkins' departure motion, explaining:

"I cannot and I do not find substantial and compelling reasons which would justify a departure. While it's true that 18 months following the commission of two acts of premeditated murder Mr. Hopkins did accept responsibility and plead guilty and agreed to testify against his co-defendant. But that standing alone is not sufficient in my judgment for me to find substantial and compelling reasons to depart. It just doesn't meet the threshold. I agree that Mr. Hopkins' childhood and background has been tragic. I would state from my years of experience that common thread tends to run against most people who commit premeditated first degree murder. He has a sad criminal history. By my count he has 22 convictions during the past 13 years on 16 separate dates, 17 of them are misdemeanors, four are felonies, one is a person felony, aggravated battery in 2016. All but one occurred in this judicial district. I think it's a stretch for me to find that his desire to work to support his family and his desire to by his example be a deterrent to his younger family members is a—it's just based on speculation from where I see it. Furthermore I don't—I'm confused by Dr. McCaffrey's testimony. He said he's got a swiss cheese brain. I'm not sure I know what that means. I'm not a neuropsychologist. But these things he testified to—well, and his testimony was all speculative because he didn't examine Mr. Hopkins. He didn't do an evaluation. But he says that he's got red flags toward a negative outcome. And then he says those red flags still exist. His guardrails are gone. His guardrail, his final guardrail was his grandfather who died in 2014. He's still subject to impulsive behavior without any guardrail to restrain him. That tends to support that if given parole at an early age he may be subject to commission of another crime like this."

Though the State requested that the sentences run consecutive, the court sentenced Hopkins to the hard 50 on count 1 and sentenced count 2 to run concurrent, expressing a desire to give Hopkins a "degree of hope" that he could be released at 80 years old.

4

The parties then turned to discussing jail time credit. After the following exchange, the district court declined to grant Hopkins any credit:

"[THE STATE]: Your Honor, for purposes of the journal entry with regard to any credit we note that the defendant also had a pending other case and probation violation. I don't believe that our plea agreement contemplated any credit for time served.

"THE COURT: That was my understanding. Is that correct? My understanding he had cases pending in this county and in Labette County and he had a revocation somewhere. . . . I did not contemplate granting him credit for time served to date unless by law he's entitled to it.

"[DEFENSE COUNSEL]: I think for some of the time he's in custody he had two cases he was under. One was dismissed in November. Our hopes at that time—

"THE COURT: Well according to the PSI he was taken into custody on June 16th, 2020, and then apparently released May 24th, 2021.

"[THE STATE]: Oh, he wasn't released, Judge. He escaped.

"THE COURT: Oh, he escaped. Okay. So that's 358 days. Then taken into custody again May 28th, 2021 to date. 214 days.

"[DEFENSE COUNSEL]: We'd ask that time be applied to this case.

"THE COURT: Unless by law I must grant that I'm denying it.

"[THE STATE]: We don't believe that he is.

"THE COURT: I don't think so either. All right."

Hopkins filed a timely notice of appeal to this court.

## DISCUSSION

*Hopkins is entitled to jail time credit against his sentence.*

Since 1978 we have held that the language in K.S.A. 2022 Supp. 21-6615(a) requires the sentencing judge to award a defendant credit for all time spent in custody "solely" on the charge for which the defendant is being sentenced while awaiting disposition of his or her case, and that a defendant is not entitled to credit for time "'which he has spent in jail upon other, distinct, and wholly unrelated charges.'" *Smith*, 309 Kan. at 981; *Campbell*, 223 Kan. 528, Syl. ¶ 2.

But the statute does not say that. Rather, K.S.A. 2022 Supp. 21-6615(a) provides:

> "In any criminal action in which the defendant is convicted, the judge, if the judge sentences the defendant to confinement, shall direct that for the purpose of computing defendant's sentence and parole eligibility and conditional release dates thereunder, that such sentence is to be computed from a date, to be specifically designated by the court in the sentencing order of the journal entry of judgment. Such date shall be established to reflect and shall be computed as an allowance for the time which the defendant has spent incarcerated pending the disposition of the defendant's case."

It is not obvious that "the time which the defendant has spent incarcerated pending the disposition of the defendant's case" should be interpreted in any way other than straightforwardly giving jail time credit for every day the defendant spent incarcerated during the "disposition of the defendant's case." And yet our cases have insisted on a confusing court-made rule requiring judges to make factual determinations about whether the incarceration was "solely" a result of the crime of conviction. An undertaking that has proved difficult and confusing to apply.

6

That said, we acknowledge that once we have established a particular point of law we generally will follow that point of law in subsequent cases where the same legal issue is raised. *McCullough v. Wilson*, 308 Kan. 1025, 1036, 426 P.3d 494 (2018). Yet we are not inexorably bound by our own precedents and may depart from them if we are clearly convinced that the rule was originally erroneous or is no longer sound because of changing conditions and that more good than harm will come by departing from precedent. 308 Kan. at 1036. We are not constrained to follow precedent when "'governing decisions are unworkable or are badly reasoned.'" *State v. Sims*, 308 Kan. 1488, 1504, 431 P.3d 288 (2018). Moreover, even when there is controlling precedent, we must still exercise plenary review over questions of statutory interpretation. *Harper*, 275 Kan. at 891.

In this instance, we are convinced that more good than harm will come from a departure from our jail time credit precedent. Though the rule first announced in *Campbell*—that a defendant is entitled to credit for all time spent in custody "solely" on the charge for which he is being sentenced—was an attempt to clarify the language of K.S.A. 2022 Supp. 21-6615(a), more than four decades of subsequent experience has revealed that this rule is unworkable and inconsistently applied.

Not only is the rule unworkable, more fundamentally it is not a proper plain language reading of the statutory language. Today we reject the *Campbell* rule in favor of interpreting the statute as it is written, i.e., as requiring the sentencing court to give a defendant "an allowance for the time which the defendant has spent incarcerated pending the disposition of the defendant's case." K.S.A. 2022 Supp. 21-6615(a). Under the obvious and plain meaning of the words chosen by the Legislature, a defendant shall be awarded jail time credit for *all* time spent in custody pending the disposition of his or her case. Not only does this have the cardinal virtue of reading statutory language in a common and straightforward way, it is also a more practical and workable standard. Indeed, most of the time, these two features naturally occur hand-in-hand. This is

7

because—despite some instances of poor or ambiguous drafting—most statutes set forth the intent of the Legislature in plain ordinary English. See, e.g., *In re M.M.*, 312 Kan. 872, 874, 482 P.3d 583 (2021) (The plain language used by the Legislature is the polestar in statutory interpretation as it informs the court of the legislative intent in enacting the statute.). Courts neglecting this principle may be tempted to inject unnecessary complexity into an otherwise ordinary expression of Legislative intent.

Reviewing a few jail time credit cases demonstrates the confusion the *Campbell* rule has caused. In *State v. Prebble*, 37 Kan. App. 2d 327, 152 P.3d 1245 (2007), Prebble was held in the McPherson County Jail pending disposition of a felony case in that district, though he also had an outstanding felony charge in Rice County as well as a detainer in McPherson County. After he was convicted, Prebble requested credit for the 231 days he had spent in the McPherson County Jail. When the district court learned about the Rice County detainer, it denied Prebble's request for jail time credit, stating: "'[T]he law in Kansas is simply if you're held under more than one charge from different counties, that it is not to be credited . . . .'" 37 Kan. App. 2d at 328. Before the Court of Appeals, the panel acknowledged that "[c]onfusion arises" when a defendant "is incarcerated for more than one case at the same time, especially when the separate cases are pending in more than one district." 37 Kan. App. 2d at 329. However, the panel determined that Prebble was entitled to credit after finding "[t]he time Prebble served in the McPherson County jail was solely on account of the charges pending against him in McPherson County." 37 Kan. App. 2d at 331.

In *State v. Taylor*, 24 Kan. App. 2d 80, 941 P.2d 954 (1997), Taylor was charged in Harvey, Reno, and Sedgwick Counties with indecent liberties with a child (all involving the same child). Taylor was sentenced to prison in the Harvey and Reno County cases and was then transferred to Sedgwick County. The panel held the time Taylor had spent in jail in Harvey or Reno County could not be applied to the Sedgwick County sentence because he had not been held in the other counties solely on account of

8

the Sedgwick County charge. However, Taylor was "clearly" entitled to credit in the Reno and Harvey County cases for the time he was incarcerated in those respective jails despite the pending Sedgwick County charge. 24 Kan. App. 2d at 83. The panel held that a "defendant incarcerated on account of multiple criminal charges filed in separate counties should receive jail time credit only against the sentence for the charges filed in the county in which he or she is held." 24 Kan. App. 2d 80, Syl. ¶ 2.

In *Campbell*, a warrant was issued for Campbell in Reno County for burglary and theft charges. Before the warrant was executed, however, Campbell was arrested in Barton County on unrelated drug charges. Campbell was held in Barton County until sentencing in that case, and he received jail time credit for the time spent in the Barton County Jail despite the pending Reno County charges. After sentencing, he was transported to Reno County to face the pending drug charges. The Reno County District Court declined to give him any jail time credit for time spent in the Barton County Jail, and this court affirmed that decision, explaining: "Though burglary and theft charges, and a charge of violation of probation, were pending against him in Reno County, he was not held in custody in Barton County solely or as a direct result of those charges." 223 Kan. at 531. In other words, this court found it proper for the Barton County District Court to give Campbell jail time credit for the time he spent in that jail, even though he had pending charges outstanding that were filed even before his Barton County arrest.

These cases show that though the rule we formulated in *Campbell* required credit be given only for the time a defendant spent in custody "solely" on the charge for which he or she was being sentenced, in practice, defendants were often awarded credit even if they had other charges pending—so it cannot be accurate to say that they were "solely" in custody on account of the charge for which they were sentenced. See, e.g., *Campbell*, 223 Kan. at 531 (credit given despite outstanding charges pending); *Taylor*, 24 Kan. App. 2d at 83 (same). Other defendants were not so fortunate. See, e.g., *State v. Richardson*, 46 Kan. App. 2d 801, 803, 264 P.3d 1048 (2011) (defendant not entitled to 375 days' credit

9

because the time was served on other charges); *State v. Wheeler*, 24 Kan. App. 2d 616, 617, 619-20, 949 P.2d 634 (1997) (prior to being charged and transferred to Sedgwick County Jail, defendant was held for 200 days in Johnson County Jail; court declined to give 200 day credit since defendant "was not in Johnson County solely on the Sedgwick County charges").

This is not a compelling case for the application of stare decisis. See *State v. Sherman*, 305 Kan. 88, 108, 378 P.3d 1060 (2016) (recognizing stare decisis is more strongly favored in cases involving property and contract rights, where reliance interests are involved). In fact, our plain language interpretation should "bolster the justice system and serve both prosecutors and defendants," because it will result in a much more straightforward and mechanical application in cases where a defendant has been in custody pending sentencing. 305 Kan. at 108.

The State's argument in the present case rests fully upon the prior rule—that Hopkins is not entitled to credit because he had other cases pending against him while he was in jail. Under our former interpretation of K.S.A. 2022 Supp. 21-6615(a), we would have had to closely evaluate each of the other charges against Hopkins to figure out how much credit, if any, could be awarded. However, applying our updated rule is a much easier endeavor; we simply conclude that because Hopkins spent 572 days in jail while his case was pending, Hopkins must be awarded 572 days in jail time credit against his hard 50 sentences.

*The district court did not abuse its discretion when it denied Hopkins' motion for a downward departure sentence.*

K.S.A. 2022 Supp. 21-6620 provides a defendant convicted of premeditated first-degree murder shall be sentenced to a hard 50 under K.S.A. 2022 Supp. 21-6623, unless based upon a review of mitigating circumstances, the court finds substantial and

10

compelling reasons to impose a departure sentence to life without parole for 25 years. K.S.A. 2022 Supp. 21-6620(c)(1)-(2). To be substantial, it must be "something that is real, not imagined, and of substance, not ephemeral." *State v. Morley*, 312 Kan. 702, Syl. ¶ 3, 479 P.3d 928 (2021). To be compelling, it must be a reason that "'forces a court—by the case's facts—to abandon the status quo and venture beyond the presumptive sentence.'" *State v. Grable*, 314 Kan. 337, 345, 498 P.3d 737 (2021).

A defendant preserves denial of a departure sentence for our review by moving for a departure at the district court and offering evidence in support, giving the district court a fair opportunity to rule on the merits. We examine a district court's ruling on a departure motion for abuse of discretion. A district court abuses its discretion if its decision is arbitrary or unreasonable, based on a legal error, or based on a factual error. Hopkins, as the party asserting error, has the burden of establishing an abuse of discretion. *State v. Boswell*, 314 Kan. 408, 413-14, 499 P.3d 1122 (2021).

As mitigating factors supporting his departure motion, Hopkins argued that he had accepted responsibility by pleading guilty and that he had "grown up hopeless" as shown by the evidence of his troubled upbringing. The district court acknowledged each factor advanced by Hopkins but concluded that these did not rise to the level of "substantial and compelling reasons" needed to impose a lesser sentence. The district court remained concerned about the serious nature of Hopkins' offenses, Dr. McCaffrey's testimony about Hopkins' impulsive behavior which may continue to be at issue if given parole at an early age, and the suffering of his victims' families.

Hopkins asserts the district court committed an error of law in denying his departure motion, because though K.S.A. 2022 Supp. 21-6620(c)(1)(A) requires a "review of mitigating circumstances," the district court instead impermissibly weighed aggravating circumstances against mitigating circumstances.

11

But on review, we conclude the district court did not engage in any weighing of the aggravating and mitigating circumstances as Hopkins suggests. Rather, it discussed Hopkins' downward durational departure motion and evaluated the justifications Hopkins provided for that departure. The record demonstrates that the district court was performing a comprehensive analysis of the attendant circumstances when denying departure, and the court was merely pointing out that the mitigating circumstances offered by Hopkins seemed to be of minimal concern given the other attendant circumstances. See *Grable*, 314 Kan. at 345. The court simply found that none of the factors presented by Hopkins were convincing.

The district court did not abuse its discretion in denying Hopkins' motion, as the district court did not commit an error of law or fact and Hopkins has not met his burden of establishing that no reasonable judge would have rejected his requested departure sentence.

Affirmed in part, reversed in part, and remanded with directions.