No. 127,852

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

STEVEN ALEXANDER MITCHELL,
*Appellant*.

SYLLABUS BY THE COURT

1.

When interpreting statutes, courts follow the express language used by the legislature without adding to or subtracting from the text.

2.

With very few exceptions, a person convicted of a crime is sentenced in accordance with the sentencing provisions in effect at the time the crime was committed.

3.

Courts generally presume that a statute operates prospectively unless its language clearly indicates that the legislature intended it to operate retroactively.

4.

The 2024 amendments to K.S.A. 21-6615(a) apply only to sentences for crimes committed on or after May 23, 2024.

Appeal from Riley District Court; GRANT D. BANNISTER, judge. Oral argument held August 27, 2025. Opinion filed October 3, 2025. Vacated in part and remanded with directions.

1

*Sean P. Randall*, of Kansas Appellate Defender Office, for appellant.

*Natalie Chalmers*, principal assistant solicitor general, *David Lowden*, deputy county attorney, *Barry R. Wilkerson*, county attorney, and *Kris W. Kobach*, attorney general, for appellee.

Before WARNER, C.J., ARNOLD-BURGER and BRUNS, JJ.

WARNER, C.J.: Steven Alexander Mitchell pleaded guilty to six crimes in two separate cases, arising from conduct that took place between January and August 2023. Mitchell was originally scheduled to be sentenced in both cases on May 20, 2024, but the district court continued the hearing until after amendments to Kansas' jail-credit statute took effect a few days later. The amended statute states that people do not receive credit for "[a]ny time awarded as credit in another case when consecutive sentences are imposed." K.S.A. 2024 Supp. 21-6615(a)(2)(A). The previous version of the jail-credit statute did not mention consecutive cases—or multiple-case situations—at all. See K.S.A. 2022 Supp. 21-6615(a).

At the continued sentencing hearing, the parties disputed which version of that statute governed—the amended jail-credit statute or the version of that statute that was in effect when Mitchell committed his crimes. The court ultimately found that the amended statute controlled. The district court proceeded to impose consecutive sentences of 92 months' and 59 months' imprisonment. The court then credited all the time Mitchell spent incarcerated pending the disposition of the two cases to the first case and denied Mitchell's request for jail credit in the second case.

Mitchell appeals, arguing the district court erred in ruling that the amendments in K.S.A. 2024 Supp. 21-6615 applied retroactively to his case. We agree. Kansas courts have long followed the rule that the version of the statute in effect at the time the crime was committed applies absent clear language indicating a contrary legislative intent, and

the legislature included no such language in the jail-credit statute. And because Mitchell's direct appeal was pending when the Kansas Supreme Court announced its decision in *State v. Ervin*, 320 Kan. 287, 306-07, 566 P.3d 481 (2025), the holding there controls the outcome in this case. We thus vacate the district court's jail-credit ruling and remand for a reassessment of Mitchell's jail credit based on that decision.

FACTUAL AND PROCEDURAL BACKGROUND

Mitchell was arrested on August 23, 2023, for conduct that occurred between January 6 and August 3, 2023. While Mitchell was being held in Riley County jail awaiting the disposition of that case, the State served him with an arrest warrant in a second case on September 22, 2023, for conduct that occurred that June. Mitchell ultimately pleaded guilty to four counts of violating the Kansas Offender Registration Act in the first case and one count each of aggravated intimidation of a witness or victim and aggravated domestic battery in the second case. The plea agreement stated that the parties agreed to recommend that the two sentences be served consecutively, likely resulting in a total controlling sentence of 151 months in prison.

Mitchell's sentencing hearing was originally scheduled for May 20, 2024. The court began—but did not complete—Mitchell's sentencing on that date. Midway through the hearing, Mitchell asked the district court to credit the sentences in both of his cases with the time he had spent in jail while those cases were pending, citing *State v. Hopkins*, 317 Kan. 652, 537 P.3d 845 (2023). He acknowledged that the legislature had recently amended the jail-credit statute to state that defendants did not receive duplicative credit for jail time in consecutive sentences. But he argued that the law "at the time that he was convicted" applied, and "that the dates of the offense should control what jail time credit he gets." In response, the State argued that Mitchell should get jail credit in the first case, but "the law has always been that you don't get double credit."

3

The district court opined that "*Hopkins* would result in one ruling and the legislation would result in a different ruling." But the court was unclear as to whether the 2024 amendment had already gone into effect. The court continued the sentencing hearing to allow the parties to research whether the 2024 amendment applied to this case.

Before the continued hearing, Mitchell filed a brief arguing again that the sentencing rules in effect as of the date of the commission of the offense apply, thus the 2024 amendment could not be applied retroactively, and he should receive jail credit in both cases. The State filed its response, arguing that *Hopkins* did not allow for duplicate jail credit and that the 2024 amendment to the jail credit statute could be applied retroactively because that statute is procedural, not substantive, and does not prejudicially affect Mitchell's substantive rights.

The continued sentencing hearing was held in June 2024. The district court stated that it had reviewed the parties' briefs, the 2024 amendment, and *Hopkins*. It agreed that the question came down to which version of the jail-credit statute applied. The court had independently researched the legislative history of the 2024 amendment and found that the testimony surrounding the bill "communicated that it would be effective immediately on sentences regardless of when" the crime was committed. And the law went into effect when it was published in the Kansas Register on May 23, 2024. The court thus concluded that the amended statute applied.

Based on this conclusion, the district court sentenced Mitchell to 92 months in prison in the first case and 59 months in the second case, to be served consecutively for a controlling term of 151 months' imprisonment, with 24 months' postrelease supervision. The district court then awarded 286 days of jail credit in the first case for time Mitchell spent in jail from August 23, 2023, through June 3, 2024. It did not award any jail credit in the second case. Mitchell appeals.

4

Mitchell's arguments on appeal relate solely to jail credit. He asserts that the district court erred in concluding that the 2024 amendments to K.S.A. 21-6615 control this appeal. Rather, he argues that the statute in effect when he committed his offenses—K.S.A. 2022 Supp. 21-6615—governs. And he points out that in *Ervin*, the Kansas Supreme Court interpreted the earlier statute (as it existed before May 2024) to require that a defendant receive one day of credit for each day they are incarcerated in their case, even if they "received an allowance for some or all that time against a sentence in another case." 320 Kan. at 312. He thus argues that he should receive credit in each case for the time he spent in jail before sentencing, even if he receives credit for some or all of that time in his other case. Mitchell argues that a contrary conclusion would effectively extend the time he was incarcerated and thus run contrary to the Ex Post Facto Clause of the United States Constitution. See U.S. Const. art. I, § 10.

The State argues that the legislature intended the 2024 amendments to take effect immediately for all sentences imposed on or after the date those amendments went into effect. It also argues that the statute is procedural in nature and does not alter Mitchell's sentence and thus does not run afoul of the Ex Post Facto Clause.

*The Kansas Jail-Credit Statute*

We begin with a matter of terminology. Mitchell's conduct leading to his convictions in these cases occurred between January and August 2023. In Kansas, most new statutes take effect on July 1, and when the effective date of that statute matters, courts typically refer to the year of the supplement that contained that statutory language. Here, there are three versions of our jail-credit statute that could potentially be relevant: K.S.A. 2022 Supp. 21-6615 (which was in effect before July 1, 2023), K.S.A. 2023 Supp. 21-6615 (which went into effect on July 1, 2023), and K.S.A. 2024 Supp. 21-6615 (which

includes the 2024 amendment). We note, however, that the 2022 and 2023 versions of the statute are identical. For ease of reference, our discussion will contrast the *earlier version* of the statute (and cite K.S.A. 2022 Supp. 21-6615) with the *amended statute* (K.S.A. 2024 Supp. 21-6615).

Before the legislature amended Kansas' jail-credit statute in 2024, the language of that statute had remained materially unchanged for many years. The earlier version of that statute stated, in relevant part:

> "In any criminal action in which the defendant is convicted, the judge, if the judge sentences the defendant to confinement, shall direct that for the purpose of computing the defendant's sentence and parole eligibility and conditional release dates thereunder, that such sentence is to be computed from a date, to be specifically designated by the court in the sentencing order of the journal entry of judgment. *Such date shall be established to reflect and shall be computed as an allowance for the time which the defendant has spent incarcerated pending the disposition of the defendant's case.*" (Emphasis added.) K.S.A. 2022 Supp. 21-6615(a).

As our state's caselaw has now thoroughly discussed, Kansas courts previously interpreted this provision to allow a defendant to receive jail credit only if they were being held "solely" on the crime charged. See *State v. Smith*, 309 Kan. 977, 981, 441 P.3d 1041 (2019); *Campbell v. State*, 223 Kan. 528, 529-31, 575 P.2d 524 (1978). This meant that criminal defendants who were held in jail for multiple cases would sometimes receive no jail credit for any of those cases. *State v. Hopkins*, 317 Kan. 652, 657-59, 537 P.3d 845 (2023). But in 2023, our Supreme Court overruled this interpretation of the statute after finding that it had become "unworkable and inconsistently applied." 317 Kan. at 657. Under its new interpretation, the Supreme Court held, "[A] defendant shall be awarded jail time credit for all time spent in custody pending the disposition of his or her case." 317 Kan. at 657.

6

The facts in *Hopkins* were different from Mitchell's situation in several ways, but two are important for purposes of this discussion. First, Hopkins had been convicted of first-degree murder and thus received a controlling off-grid life sentence. Second, Hopkins did not involve multiple cases carrying consecutive sentences.

Following the Supreme Court's decision in *Hopkins*, there was some question as to how that decision should be applied to situations involving sentences governed by the Kansas Sentencing Guidelines Act where consecutive sentences had been imposed under K.S.A. 21-6606. See *State v. Feikert*, 64 Kan. App. 2d 503, 503-04, 553 P.3d 344 (2024), *rev. granted and summarily vacated* 320 Kan. 864 (2025). In the 2024 legislative session, the Kansas Legislature addressed this ambiguity by amending the jail-credit statute. K.S.A. 2024 Supp. 21-6615(a) now states:

"(a)(1) In any criminal action in which the defendant is convicted, the judge, if the judge sentences the defendant to confinement, shall direct that for the purpose of computing the defendant's sentence and parole eligibility and conditional release dates thereunder, that such sentence is to be computed from a date, to be specifically designated by the court in the sentencing order of the journal entry of judgment. Such date shall be established to reflect and shall be computed as an allowance for the time that the defendant has spent incarcerated pending the disposition of the defendant's case. *The defendant shall be entitled to have credit applied for each day spent incarcerated.* In recording the commencing date of such sentence the date as specifically set forth by the court shall be used as the date of sentence and all good time allowances as are authorized by the secretary of corrections are to be allowed on such sentence from such date as though the defendant were actually incarcerated in any of the institutions of the state correctional system.

*(2) When computing the defendant's sentence, the following shall not be considered time spent incarcerated pending disposition of the defendant's case:*

*(A) Any time awarded as credit in another case when consecutive sentences are imposed on a defendant; or*

*(B) any time spent incarcerated in another jurisdiction if no hold has been issued in such jurisdiction for the case being sentenced.*" (Emphases added.)

7

The amended statute did multiple things. It codified the holding in *Hopkins*, stating that "[t]he defendant shall be entitled to have credit applied for each day spent incarcerated." K.S.A. 2024 Supp. 21-6615(a)(1); see *Hopkins*, 317 Kan. at 657. It also clarified that a person does not receive duplicative jail credit toward a consecutive sentence if they already received credit toward a sentence they are serving consecutively and limited the situations where a person could receive credit toward their sentence for time spent incarcerated in another jurisdiction. K.S.A. 2024 Supp. 21-6615(a)(2)(A), (B). This statute took effect when it was published in the Kansas Register on May 23, 2024. See L. 2024, ch. 96, § 13.

While Mitchell's case was pending, our Supreme Court decided *Ervin*, adding another wrinkle to our analysis. *Ervin* involved a grid-sentence that ran consecutive to an off-grid life sentence for the defendant's felony-murder conviction. The *Ervin* court interpreted the earlier version of the statute—K.S.A. 2022 Supp. 21-6615(a)—to compel an award of one day of jail credit for "each day that [a defendant] was incarcerated pending disposition of [a criminal] case regardless of whether [the defendant] received an allowance for some or all that time against a sentence in another case." 320 Kan. at 311-12. In other words, *Ervin* found that the earlier version of the statute allowed for duplicative credit in consecutive cases.

*Ervin* expressly declined to consider whether K.S.A. 2024 Supp. 21-6615(a) applied retroactively, as the parties had not raised the question in their briefing. 320 Kan. at 311. But that question is squarely before us here. If the amended statute governs, as the district court found, then Mitchell is not entitled to any additional credit toward his consecutive sentence, as he has already received credit in his first case for each day he spent incarcerated while these cases were pending. See K.S.A. 2024 Supp. 21-6615(a)(2)(A). If Mitchell is correct that K.S.A. 2022 Supp. 21-6615(a) applies, then *Ervin*'s interpretation of that statutory language governs, and Mitchell should have

8

received jail credit toward the sentence in his second case for each day he spent incarcerated pending its disposition.

*Effect of the 2024 Amendments*

Although we have previously described the question before us as whether K.S.A. 2024 Supp. 21-6615(a) applies *retroactively*, the parties' arguments here are more nuanced. The State does not argue that the 2024 amendments apply to jail-credit rulings rendered before those amendments took effect. Instead, it argues that the legislature intended the amendments to apply to all sentences imposed—and all jail-credit determinations made—after May 23, 2024. Mitchell argues that the legislature did not make any such intention known in the amended statutory language, and there are sound reasons why we should interpret that language as applying to sentences for crimes committed—not sentences imposed—after the amendments became effective. Mitchell has the better argument.

Three longstanding statutory principles guide our analysis.

*First*, appellate courts "exercise plenary review over questions of statutory interpretation." *Hopkins*, 317 Kan. at 656. Our goal in interpreting statutes is to give effect to the legislature's intent, evinced through the statutory language it has enacted. *H.B. v. M.J.*, 315 Kan. 310, 320, 508 P.3d 368 (2022). We thus "'follow the express language used when it is plain and unambiguous, giving common words their ordinary meanings, without adding to or subtracting from the text.'" *Ervin*, 320 Kan. at 306-07 (quoting *American Warrior, Inc. v. Board of Finney County Comm'rs*, 319 Kan. 78, 81, 552 P.3d 1219 [2024]). Only when there is an ambiguity in the statutory text do we turn to other construction tools to ascertain legislative intent. *State v. Betts*, 316 Kan. 191, 198, 514 P.3d 341 (2022).

*Second*, Kansas courts have long held that "'the fundamental rule for sentencing is that the person convicted of a crime is sentenced in accordance with the sentencing provisions in effect at the time the crime was committed.'" *State v. McLinn*, 307 Kan. 307, 337, 409 P.3d 1 (2018); see, e.g., *State v. Keel*, 302 Kan. 560, 589, 357 P.3d 251 (2015); *State v. Anthony*, 273 Kan. 726, 730, 45 P.3d 852 (2002); *State v. Roseborough*, 263 Kan. 378, 386, 951 P.2d 532 (1997); *State v. Fierro*, 257 Kan. 639, 649, 895 P.2d 186 (1995). This rule is rooted in practical fairness and is a logical corollary to the principle that "a person must have notice that certain conduct is illegal before they may be convicted of a crime for engaging in that conduct." *State v. Lawton*, 65 Kan. App. 2d 749, 752, 571 P.3d 1 (2025), *petition for rev. filed* July 21, 2025. Someone should have notice of the consequences of their actions before they engage in criminal conduct.

*Third*, courts generally presume that "'a statute operates prospectively unless its language clearly indicates that the legislature intended it to operate retroactively.'" *Roseborough*, 263 Kan. at 381 (quoting *State v. Sutherland*, 248 Kan. 96, Syl. ¶ 4, 804 P.2d 970 [1991]); see *State v. Brownlee*, 302 Kan. 491, 509, 354 P.3d 525 (2015). Courts have recognized an exception to this principle "'for [a] statutory change that is merely procedural or remedial in nature, but . . . a statute that defines the length or type of criminal punishment is substantive.'" *Roseborough*, 263 Kan. at 381.

Applying these principles here, we agree with Mitchell that the legislature provided no indication that it intended the amended jail-credit statute to apply retroactively in any respect. The legislature has demonstrated this intent in other contexts by crafting language to achieve that goal. See, e.g., *State v. Sheppard*, 56 Kan. App. 2d 1193, 444 P.3d 1006 (discussing how K.S.A. 21-6810[e] [governing criminal history categories and classification] states the 2015 amendments made to the section were "'procedural in nature and shall be construed and applied retroactively'"), *rev. denied* 311 Kan. 1049 (2019). But it did not include any such language here.

The State acknowledges the absence of any express retroactivity language. But it argues that Kansas courts have sometimes taken a broader view of statutory language to ascertain whether a statute should apply retroactively, citing *State v. King*, 14 Kan. App. 2d 478, 793 P.2d 1267 (1990) (which involved a previous jail-credit provision for probation revocations), and *State v. Patton*, 315 Kan. 1, 15, 503 P.3d 1022 (2022) (which interpreted the DUI sentencing statute). We have reviewed these cases and do not find they warrant a different interpretation.

*King* involved an appeal of the denial of jail credit in a different context. The court found that the language in a previous jail-credit statute, K.S.A. 1989 Supp. 21-4614a (which changed the law to make jail credit mandatory, rather than discretionary, when someone's probation had been revoked), should apply retroactively to King's case even though those amendments were adopted after he committed his underlying offenses. The modification reflected a change in legislative policy on jail credit. The amendment expressly directed that the change would apply in "any" case in which the district court revoked probation, effectively obviating the need for explicit retroactivity language. 14 Kan. App. 2d at 480. The *King* court thus found the language of that statute, considered as a whole, evinced a legislative intent to apply those provisions to all sentences rendered after the statute went into effect. 14 Kan. App. 2d at 480-81.

*Patton* analyzed our state's driving under the influence (DUI) statute, K.S.A. 8-1567. In a previous decision, the Kansas Supreme Court had held that a defendant was entitled to the benefit of the version of that statute that was in effect at sentencing, as the amended statute shortened the lookback period for enhancing a sentence based on how many times a person had previously been convicted of DUI. See *State v. Reese*, 300 Kan. 650, 653-57, 333 P.3d 149 (2014). In *Patton*, the Supreme Court limited and clarified that earlier ruling, finding that "a sentencing court should apply the version of K.S.A. 8-1567 [the DUI statute] in effect at the time of sentencing *unless* the Legislature amended

11

the statutory provisions after the offense was committed *and* that amendment increases the defendant's penalty." 315 Kan. at 3. The *Patton* court emphasized the latter language, because "[i]n those circumstances, applying the intervening change in the law . . . would violate the Ex Post Facto Clause of article I, section 10 of the United States Constitution." 315 Kan. at 3. In such circumstances, "sentencing courts should instead apply the version of K.S.A. 8-1567 in effect when the defendant committed the DUI offense." 315 Kan. at 3.

While these cases do involve exceptions to our general principles regarding retroactivity, we are not persuaded that they support the State's position. The 2024 amendment to K.S.A. 21-6615 stands on a demonstrably different footing than the statutes discussed in either of these cases. The recent amendment legislatively overruled *Hopkins* to the extent the opinion might permit double counting of jail credit toward consecutive sentences—a construction defendants had begun to advance. (Indeed, the amendment presciently anticipated the court's more recent ruling in *Ervin*, putting precisely that gloss on *Hopkins*.) So the 2024 amendment recast the general rule governing jail credit—not a limited application tied only to probation revocations—and overruled a judicial reading of that general rule. In that circumstance, we may fairly conclude the legislature would have explicitly declared the amendment to be retroactive if it intended the change to apply to cases pending before the amendment's effective date.

We are also mindful that *King* and *Reese* involved instances where the legislature had reduced the burden on a criminal defendant at sentencing. That is not the case here. Instead, as we have noted, the 2024 amendments to the jail-credit statute would result in Mitchell receiving less credit toward his sentence than he would under *Ervin*'s interpretation of K.S.A. 2022 Supp. 21-6615(a). Thus, *Patton* reasons that the earlier version of that statute—which was in effect when Mitchell committed his crimes— should govern. 315 Kan. at 3. And we note that the Kansas Supreme Court has not applied its broad reading of the DUI statute in *Reese* to other sentencing statutes outside

12

the DUI context. Instead, it has repeatedly held that the sentencing statute in effect when a person commits an offense controls. See *McLinn*, 307 Kan. at 337.

The State also argues that the speed with which the legislature reacted to the *Hopkins* decision—by swiftly passing the amendment and indicating that it should take effect upon publication in the Kansas Register, rather than on July 1—indicates the legislature intended the amendment to have an immediate impact. That may be true. But the statute includes no language to demonstrate that the legislature intended that effect to apply to pending cases at sentencing, rather than to cases arising from conduct taking place after its effective date. The latter interpretation, which is consistent with longstanding Kansas caselaw and legislative practice, would still warrant the intent to have the statute become effective upon publication.

In *Ervin*, the Kansas Supreme Court expressly declined to consider any arguments regarding the interpretation of the jail-credit statute beyond the statutory language. 320 Kan. at 306-07. At bottom, that is what the State's proposed construction would have us do—read additional requirements not found in the statutory language to expand the 2024 amendments' application beyond its plain text. We decline to graft requirements onto the statute that the legislature did not include.

In short, K.S.A. 2024 Supp. 21-6615(a) includes no language indicating that the legislature intended to apply it retroactively to pending cases awaiting sentencing. In the absence of any such indication, the 2024 amendments apply only to sentences for crimes committed on or after May 23, 2024. Based on this interpretation, we need not consider Mitchell's argument that a contrary interpretation would violate the Ex Post Facto Clause. See *Patton*, 315 Kan. at 3.

Before closing, we pause to comment on one other procedural twist in this case. As we have indicated, Mitchell's original sentencing hearing took place on May 20,

13

2024—before K.S.A. 2024 Supp. 21-6615(a) went into effect. On its own motion, the district court continued the sentencing hearing to determine whether the amendments to the jail-credit statute had gone into effect. The continued hearing took place in June 2024, and the district court found the amended statute controlled and applied it. We do not believe, in reviewing the record, that the court or the parties intended for this delay to deprive Mitchell of jail credit he would have otherwise received. And because we have concluded that K.S.A. 2024 Supp. 21-6615(a) only applies to sentences for criminal conduct committed after May 23, 2024, not to sentences rendered after that date, the district court's decision to continue the sentencing hearing did not ultimately impact Mitchell's case. But we are nevertheless troubled by the delay in the process that occurred and the court's willingness to allow that delay to affect the time Mitchell spends in custody. Indeed, these facts demonstrate the practical wisdom of the rule that a defendant's jail credit is determined by the statute in effect when they commit their offenses—not at a more mutable time (such as a sentencing hearing).

Mitchell's jail credit is governed by K.S.A. 2022 Supp. 21-6615(a), which the Kansas Supreme Court interpreted in *Ervin* to allow credit against a defendant's sentence for "each day that [they were] incarcerated pending disposition of [a criminal] case regardless of whether [they] received an allowance for some or all that time against a sentence in another case." 320 Kan. at 311-12. Here, the district court awarded 286 days of jail credit in the first case for time Mitchell spent in jail from August 23, 2023, through June 3, 2024. But it did not award any jail credit in the second case. This was error under *Ervin*.

The State argues that *Ervin* was wrongly decided and urges a different interpretation of the version of the statute that governs Mitchell's case. But we are duty-bound to follow Supreme Court precedent, absent some indication of a departure. *Patton*, 315 Kan. at 16.

14

We vacate the district court's jail-credit determination and remand with directions to reassess that determination under K.S.A. 2022 Supp. 21-6615(a), as interpreted in *Ervin*.

Vacated in part and remanded with directions.