NOT DESIGNATED FOR PUBLICATION

No. 127,094

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

TAMARIS LOVING,
*Appellant*.

MEMORANDUM OPINION

Appeal from Norton District Court; JODY ENFIELD, magistrate judge. Submitted without oral argument. Opinion filed July 25, 2025. Reversed and remanded with directions.

*Peter Maharry*, of Kansas Appellate Defender Office, for appellant.

*Tyler W. Winslow*, assistant solicitor general, and *Kris W. Kobach*, attorney general, for appellee.

Before HURST, P.J., ISHERWOOD and PICKERING, JJ.

PER CURIAM: After pleading no contest to one count of methamphetamine possession, Tamaris Loving was set to be sentenced. At his sentencing hearing, he requested a continuance to retain private counsel, which the district court denied. On appeal, Loving asserts the district court's denial of his continuance request violated his right under the Sixth Amendment to the United States Constitution to counsel of his choice. After reviewing the record and weighing the factors established in *State v. Anthony*, 257 Kan. 1003, 1019, 898 P.2d 1109 (1995), we find the district court abused its discretion. We reverse and remand for the district court to hold further proceedings.

1

FACTUAL AND PROCEDURAL BACKGROUND

In June 2022, the State charged Loving in Norton County with one count each of methamphetamine distribution and conspiracy to distribute a controlled substance, as well as two counts of unlawful manufacture, distribution, or possession of a controlled substance using a communication facility. Loving did not appear for a combined preliminary hearing and status conference in August 2022 because he was in custody in Geary County with pending charges. Loving again did not appear at a status hearing in February 2023. It appears that Loving may have been incarcerated in another county, though the parties were uncertain of his location.

In June 2023, Loving pled no contest to one count of methamphetamine possession. During the plea hearing, the district court explained that because methamphetamine possession is a severity level 5 drug felony, Loving faced "a minimum of ten months imprisonment and a maximum of 42 months" depending on Loving's criminal history score. The district court did not determine Loving's criminal history score at the hearing. The district court found Loving guilty and scheduled sentencing for August 28, 2023. Loving failed to appear on the August sentencing date due to being in custody at the time. The district court revoked Loving's bond and issued a bench warrant. Once the court learned Loving had been in custody, the court recalled the warrant.

The sentencing hearing was rescheduled for November 20, 2023. At that same hearing, the district court also considered the State's motion to revoke Loving's probation in another case. The court stated on the record that before the hearing began, Loving said that he wanted different defense counsel. The court put Loving and defense counsel in a Zoom breakout room to confer privately. After their private discussion, defense counsel told the district court on the record that Loving had retained different counsel and planned to move to withdraw his plea. Defense counsel said this was the first time she had heard that Loving wanted different counsel.

2

Loving then advised the district court that he was "not getting" what he needed from his lawyer on this case. He explained that there had "been a few times" that he had asked his attorney for a continuance as he had been "dealing with other cases." He said he "had already been trying—trying to get me a, a paid lawyer in my cases." Loving stated he had hired new counsel and his family was helping him pay. His hired counsel had not yet entered an appearance in the case. Loving added that his retained counsel told him he needed to first tell the court that he was firing his defense counsel. The district court responded that Loving could not fire his defense counsel because she was appointed; the court would instead have to find a reason to allow counsel to withdraw. Loving's attorney did not clarify the court's statement that Loving could not fire his appointed counsel.

Thereafter, defense counsel informed the district court that Loving still had pending charges in Geary County. Loving told the court those cases were the reason he sought continuances from defense counsel: "I asked her is there any way that we can get this continued so we can set these." He explained that he did not want to serve a prison sentence while he still had additional "open" pending criminal cases. Defense counsel advised that she had told Loving they "had no grounds to continue" his present case since he had already pled, and the case was unrelated to his Geary County cases.

In response, Loving stated that defense counsel had not told him anything; he had contacted defense counsel's office twice the week prior and had not received an answer about his requested continuance. Loving told the court that he had been trying to retain counsel "for a minute now."

Loving told the court that he was unaware that he would serve a prison term for the drug offense: "I didn't even know that I was going to be doing prison time." He recalled how he and defense counsel "got into it about" whether he knew he would go to prison. It is unclear when or where that alleged dispute occurred. During the hearing while still on the record, Loving and defense counsel argued about their discussions

surrounding Loving's plea. Loving's defense counsel challenged the veracity of Loving's statements but stopped disputing the matter with Loving, stating that she did not believe their dispute was "appropriate for the court."

Loving then requested a continuance so he could "get with" his retained counsel. He stated that he was consulting his retained counsel on whether to move to withdraw his plea and wanted to "get some other situations to compare" with his other pending cases. He explained further:

> "That's why I'm paying for a whole 'nother attorney. Because I don't want to go to prison and be stuck in prison coming back and forth for these cases.
> "I can't get a—I can't get a proper entry job or anything. I'll just be stuck there. And I'm stuck just dealing with these cases.
> "And I, I'll be already in DOC custody. That makes no sense."

The State agreed with Loving's continuance request and appeared concerned that proceeding to sentencing could cause "bigger issues down the road." The State proposed continuing sentencing for two weeks. Defense counsel also requested a continuance but said she was prepared to proceed. Defense counsel suggested that "if the grounds for continuance is he wishes to pursue potentially withdrawing his plea, then I think the Court needs more time to give him time to do that."

The district court asked Loving when he hired retained counsel. Loving responded that his family had talked to his hired counsel on the prior Thursday or Friday. Loving believed his family had already paid $800 for retained counsel.

The district court found there was not good cause to continue sentencing or to allow defense counsel to withdraw. Loving attempted to explain the situation as the court issued its ruling:

4

"[THE COURT]: These [cases] have been pending for quite some time. Mr. Loving entered a plea back in June. It was set for August for sentencing. And Mr. Loving didn't appear.

"He's had time since then to hire an attorney. Which he apparently hasn't done until just a day or two before this.

"[LOVING]: Well, I—

"[THE COURT]: We also have the motion to revoke probation that's . . . been pending for quite some time.

"[LOVING]: Judge—

"[THE COURT]: And—

"[LOVING]: —I just said we've been working on this for months. I just said I spoke to—I spoke to [retained counsel] like Thursday or Friday.

"[THE COURT]: And I just said I find that there's no good cause to grant a continuance.

"And so we're going to proceed with—with both cases today."

The district court proceeded with sentencing. When the court began discussing Loving's presentence investigation (PSI) report with him, Loving told the court that he did not "know anything" about his PSI report. The PSI report listed Loving's prior convictions, allocated a criminal history score of B, and recommended that Loving not receive any jail time credit for this criminal case.

Learning of Loving's ignorance of the PSI report, the district court asked defense counsel if she had reviewed the PSI report with Loving. Defense counsel responded:

"That's what I'm trying to look here. It was sent to him, Your Honor. *I'm not sure* if we specifically went over it as there were not any issues from my review.

"And he did not bring up any. Um, but if you want to put me in a breakout room I can show him the criminal history score.

"[S]how him the criminal history and review that with him." (Emphasis added.)

5

Loving again stated he did not "really even know what's going on" and said, "That's why I wanted to hire new counsel. That's why I wanted this whole continuance." He stated a moment later, "They—they just want to put me in prison. Uh, it doesn't make no sense. And all I asked for was a continuance."

The district court did not address defense counsel's acknowledgement that she had not yet reviewed the PSI report with Loving. The district court also did not comment on Loving's statement that he did not know what was "going on." Instead, the court reviewed each listed conviction with Loving, asking him if the listed convictions were accurate. Loving could not recall if some of his convictions were accurate because of how much time that had passed since the convictions.

The district court found that Loving had a criminal history score of B. The court sentenced Loving to 34 months in prison, with the sentence to run consecutive to another case from Geary County pending a conviction in that case. Following the PSI report's recommendation, the district court did not credit Loving with any jail time for this case. Loving's defense counsel agreed with this ruling, advising the court that Loving would receive jail credit for his other pending criminal cases, but not this case. After the court pronounced sentence, defense counsel informed the court that her office called retained counsel's office, and retained counsel's office claimed it had no information on Loving.

Loving now appeals.

ANALYSIS

*The District Court Abused Its Discretion in Denying Loving's Request for a Continuance to Retain Private Counsel*

*Standard of Review*

Loving contends we should exercise unlimited review over whether the district court's denial of a continuance violated his right to counsel. He cites our Supreme Court's holding in *State v. Flack*, 318 Kan. 79, 102, 541 P.3d 717 (2024): "We review a continuance denial's possible interference with the right to present a defense de novo."

The State responds that the proper standard is abuse of discretion. The State asserts the cases relied on by *Flack* represent "a deviation from Kansas Supreme Court and United States Supreme Court precedent applying abuse of discretion for cases where a continuance implicates the Sixth Amendment right to counsel of choice."

In *Flack*, Flack challenged the district court's denial of continuances leading up to trial. He specifically claimed the continuance denials violated his right to present a defense. The Supreme Court exercised unlimited review over whether the district court's continuance denials violated Flack's right to present a defense. The court explained that "[t]he phrase 'right to present a defense' is a blanket term for a collection of a defendant's rights, including a right to present evidence on his or her own behalf." 318 Kan. at 101.

The *Flack* court referenced *State v. Robinson*, 303 Kan. 11, 85, 363 P.3d 875 (2015), *disapproved of by State v. Cheever*, 306 Kan. 760, 402 P.3d 1126 (2017), which stated appellate courts review allegations of deprivation of constitutional rights de novo. *Flack*, 318 Kan. at 102. In *Robinson*, Robinson claimed the district court's refusal to continue his trial violated his due process rights and his right to counsel of choice "by

7

having him bear the risk that counsel would be unprepared." 303 Kan. at 84. The court noted that Robinson's right to counsel claim was "more akin to an abuse of discretion challenge," but Robinson alleged the district court made factual errors burdening his right to counsel of choice. 303 Kan. at 87.

Loving asks us to read *Flack* as changing the standard of review for a continuance denial in this context from abuse of discretion to de novo. Yet, as the State points out, *Flack* did not overrule cases applying an abuse of discretion standard when reviewing whether a continuance denial violated a defendant's right to counsel, such as *State v. Johnson*, 304 Kan. 924, 950, 376 P.3d 70 (2016), or *Anthony*, 257 Kan. at 1018. Loving, moreover, does not assert that the district court's denial of a continuance violated his right to present a defense, as Flack did. Therefore, the general rule that appellate courts review the denial of a continuance for abuse of discretion remains the proper standard of review. See *State v. Gentry*, 310 Kan. 715, 734, 449 P.3d 429 (2019).

*Discussion*

Under the Sixth Amendment, "'a defendant must be afforded a reasonable opportunity to secure counsel of his or her choosing.' Although 'an accused must be provided a fair opportunity to obtain counsel of his or her choice, this right cannot be manipulated to impede the efficient administration of justice.' [Citations omitted.]" *Johnson*, 304 Kan. at 945.

When the district court's discretionary power to grant or deny continuances conflicts with a defendant's constitutional right to counsel of his or her choice, appellate courts must balance several factors in determining whether the district court's conduct was "'fair and reasonable.'" *Anthony*, 257 Kan. at 1019. Those factors are: "(1) whether a continuance would inconvenience witnesses, the court, counsel, or the parties; (2) whether other continuances have been granted; (3) whether legitimate reasons exist for

the delay; (4) whether the delay is the fault of the defendant; and (5) whether denial of a continuance would prejudice the defendant." 257 Kan. at 1019.

Anthony *Factors*

Loving asserts that at least four of the five *Anthony* factors weigh in his favor. For the first factor, he contends there would be no inconvenience since there were no witnesses at sentencing and both parties requested the continuance. For the second factor, Loving claims the case was delayed due to COVID and plea negotiations amid Loving's multiple cases across multiple counties. On the third factor, Loving maintains that hiring counsel of his choice was a "weighty reason" for a continuance with "minimal delay," establishing a legitimate reason. On the fourth factor, Loving restates the reasons for delay listed for the second factor. He also acknowledges that he bears some fault for failing to appear at his original sentencing hearing. Nonetheless, Loving claims "a continuance from the November hearing would not have inordinately delayed the proceedings." For the fifth factor, Loving argues that the district court prejudiced him by violating his Sixth Amendment right to his counsel of choice.

The State responds that the only *Anthony* factor weighing in Loving's favor is the first factor. For the second factor, the State claims the first sentencing hearing was continued due to Loving's failure to appear. Third, the State contends that Loving did not have a valid reason for a continuance. The State maintains that Loving did not tell defense counsel that he wanted other counsel, did not have his retained counsel contact the court, and was inconsistent when discussing his communications with retained counsel. The State further contends that Loving's request was "illegitimate" because he "made multiple statements asserting that he wanted time to evaluate how to proceed in the Norton County cases to resolve all his other cases and avoid prison." For the fourth factor, the State asserts the delay is Loving's fault since he had months to obtain retained counsel but waited until weeks before sentencing while failing to mention a desire for

new counsel until the day of sentencing. Last, the State claims Loving was not prejudiced since "Loving did nothing to have counsel of choice present for the sentencing hearing, and his court-appointed attorney was prepared for the hearing."

The State compares this case to *Johnson* and *Anthony*. In *Anthony*, the counsel Anthony wanted to retain told the district court he could not enter his appearance without first getting a continuance. Anthony requested the continuance 18 days before trial. Counsel told the court Anthony did not have funds to retain him until a few weeks prior and claimed he could not effectively represent Anthony without a continuance due to the seriousness of the case. He requested a two-month continuance. The district court denied the continuance, having already granted a prior continuance. On appeal, the Supreme Court found no abuse of discretion in denying the continuance. The court deduced that the only reason for the continuance was to allow retained counsel to enter an appearance. But the court explained that the district court did not prohibit retained counsel from entering the case; it only denied a continuance for that purpose. The court also found that because one of Anthony's codefendants opposed the continuance and refused to waive his speedy trial rights, a continuance would have severed the cases. 257 Kan. at 1019-20.

In *Johnson*, Johnson's retained counsel entered his appearance six days before trial and requested a continuance. The State opposed a continuance, and the district court denied the request. The district court had previously granted two changes of counsel and three trial continuances. On appeal, the Supreme Court found all five *Anthony* factors weighed in the State's favor. First, the court found a continuance would have inconvenienced witnesses and scheduling a new trial date would have been difficult. Second, the court noted the three prior trial continuances. Third, the court concluded Johnson's retained counsel was prepared to go to trial and Johnson was attempting to delay trial. Fourth, the court found the delay was Johnson's fault since, after initially expressing his desire for retained counsel, he took eight months to obtain such counsel.

Fifth, the court concluded Johnson was not prejudiced as he did not show he was denied effective assistance of counsel at trial. *Johnson*, 304 Kan. at 948-49.

The State argues that *Johnson* and *Anthony* are analogous in that *Johnson* also involved retained counsel who "was not barred from entering his appearance, only from additional time to prepare for trial," while *Anthony* similarly entailed a denied continuance "because the defendant had an apparent desire to delay the trial."

Contrary to the State's argument, *Johnson* and *Anthony* are distinguishable from this case. Both cases involved continuance requests shortly before jury trials, one a two-month continuance and the other an undetermined continuance length. The State opposed the continuance requests in *Johnson* and *Anthony*. Additionally, the defendants in *Johnson* and *Anthony* requested continuances to allow new counsel to enter their appearances in those cases and afford counsel more time to prepare for trial.

Here, Loving requested a two-week continuance—at the beginning of sentencing when there were no witnesses—so he could consult retained counsel about potentially moving to withdraw his plea. Loving also expressed dissatisfaction with his defense counsel, stating that he had been unable to speak with her before the sentencing hearing. The State also supported the continuance request and suggested a two-week continuance. Therefore, the State's comparisons to *Johnson* and *Anthony* are unpersuasive.

This case is more analogous to *State v. Cunefare*, No. 119,779, 2019 WL 5275638 (Kan. App. 2019) (unpublished opinion). There, the district court continued Cunefare's original sentencing date due to a possible objection to his criminal history. At the rescheduled sentencing hearing, Cunefare's defense counsel requested to withdraw due to a conflict, stating there had been "a material breakdown in the attorney-client relationship after having additional discussions with Cunefare." 2019 WL 5275638, at *1. After the district court denied the withdrawal request, Cunefare requested a continuance for one

11

week to retain other counsel. The court granted the continuance. Before the next sentencing hearing, defense counsel moved to withdraw Cunefare's plea over "failure to communicate with his attorney regarding his understanding of the terms of the plea agreement." 2019 WL 5275638, at *1. At the start of the next hearing, defense counsel told the court that "he and Cunefare's interests were adverse" and requested withdrawal again. 2019 WL 5275638, at *1. The district court denied the withdrawal request. Cunefare later requested a continuance to hire counsel, claiming he was paying the retainer fee later that day. Cunefare also said he did not believe defense counsel had adequately represented him in the case. The district court denied a continuance.

The *Cunefare* panel found that the *Anthony* factors weighed in favor of granting a continuance. First, the panel concluded a continuance "would not be a great inconvenience" since there were no witnesses and Cunefare requested a one-week continuance. 2019 WL 5275638, at *6. Second, the panel found the district court had previously granted a continuance to retain new counsel. But the panel noted Cunefare's explanation that he planned to pay the retainer fee that day after getting his paycheck and that "he had met with the attorney earlier that week." 2019 WL 5275638, at *6. Third, the panel found that "[b]ecause Cunefare did not have a chance to actually retain the attorney, legitimate reasons existed for the delay." 2019 WL 5275638, at *6. Fourth, the panel concluded the delay was Cunefare's fault since he did not request retained counsel until the second sentencing hearing. But the panel highlighted that the potential attorney-client conflict was not apparent until that time. Fifth, the panel found prejudice in the potential adverse interests between Cunefare and defense counsel.

In reaching its decision, the panel emphasized that defense counsel did not feel comfortable going forward, particularly since he had moved to withdraw Cunefare's plea due to "a failure to communicate with Cunefare." 2019 WL 5275638, at *6. The panel found: "Cunefare presents an issue of whether the plea was validly entered into given [defense counsel's] representation." 2019 WL 5275638, at *6. Thus, the panel concluded

12

the district court erred in denying Cunefare's continuance and remanded "to allow Cunefare to retain an attorney and for further proceedings." 2019 WL 5275638, at \*7.

The *Anthony* factors apply similarly here. Under the first factor—inconvenience to witnesses, the court, counsel, or the parties—there were no witnesses at sentencing. The court did not indicate that a continuance would burden its schedule aside from its statement that the case had been pending for some time. All parties involved—the State, defense counsel, and Loving—all requested a two-week continuance. Therefore, a continuance would have caused minimal inconvenience. This factor weighs in favor of granting a continuance.

Under the second factor—whether the court had granted other continuances—the record indicates the district court rescheduled three hearings due to Loving's failure to appear. During at least one of those hearings, he was in custody in another county. When he failed to appear for a status hearing, the parties confirmed he had recently been in custody elsewhere but were unsure if that was still the case. Loving acknowledged his failure to appear on his original sentencing date. This factor weighs against granting a continuance.

Under the third factor—legitimate reasons for the delay—Loving sought a continuance so he could meet with retained counsel to discuss his options and potentially move to withdraw his plea. There remains some uncertainty here given defense counsel's claim that retained counsel's office had no information on Loving. Loving, however, indicated he had met with retained counsel and his family had already at least partially paid retained counsel. Loving indicated he had been working to hire counsel for months.

Loving also told the district court he was following private counsel's advice to first inform the court that he was firing his appointed counsel. In response, the district court told Loving that he could *not* fire his counsel because she was appointed. This is partially

13

correct. While an indigent criminal defendant is not guaranteed the right to appointed counsel of his or her choice, nor has an absolute right to substitute court-appointed counsel, an indigent defendant has a right to retain private counsel. Regardless, the record on appeal is unclear if this factored into the district court's decision to deny Loving's request to continue the sentencing hearing.

And even if Loving was unable to retain new counsel, he had explained that there had "been a few times" that he asked his defense attorney to move for a continuance. A two-week continuance would have been sufficient time for Loving and his defense counsel to review his PSI report before the next sentencing hearing. Loving's need to review the PSI report before the sentencing hearing began became evident at the sentencing hearing. Defense counsel was not able to substantiate that she had reviewed the PSI report and its findings with Loving.

Due to defense counsel's failure to review the PSI report with Loving, the district court took it upon itself to ask Loving about the listed convictions that were purported to be part of his criminal history. The court asked Loving several questions about the convictions listed in the presentence information worksheet. Loving responded that he was unfamiliar with the PSI report's findings regarding his criminal history. At one point in the court's review of the listed convictions, Loving told the court, "I'm not sure of all of these cases." The court moved to the next offense and asked if the offense was accurate. Loving replied, "Judge, I don't—I don't know. I don't know. This has been years ago. This is almost ten years ago, I couldn't tell you but—." The court then moved to the next offense, and again Loving could not confirm the conviction's accuracy. After hearing Loving confirm two person felonies, the court made a finding of Loving's criminal history score.

As we can see from Loving's responses to the court regarding his PSI report, he was unable to ensure the report's accuracy. A continuance of the sentencing hearing,

14

however, would have allowed Loving time to review the PSI report and raise any objections to his criminal history score. See K.S.A. 21-6814(c) ("Upon receipt of the criminal history worksheet prepared for the court, the offender shall immediately notify the district attorney and the court with written notice of any error in the proposed criminal history worksheet."); *State v. Roberts*, 314 Kan. 316, 322, 498 P.3d 725 (2021) ("K.S.A. 2020 Supp. 21-6814[c] requires the offender to immediately notify the district attorney and the court through written notice of any error in the proposed criminal history worksheet."). Thus, the ability to review and confirm the PSI report's findings with an attorney is another reason for granting the continuance.

Altogether, these facts show this factor weighs in favor of granting a continuance.

Under the fourth factor—whether the delay is the defendant's fault—the delay here was Loving's responsibility as he failed to appear at his original sentencing. It is unclear exactly when a potential conflict between Loving and defense counsel arose. Defense counsel stated at the sentencing hearing that it was the first time she heard Loving wanted retained counsel, though Loving claimed he had been looking to retain counsel for months. The record also shows that Loving was in custody leading up to sentencing. Considering these facts, this factor weighs against granting a continuance.

Under the fifth factor—a continuance denial's prejudice to the defendant—Loving expressed dissatisfaction with defense counsel's handling of his plea, claiming he did not know he would go to prison. At one point, Loving and defense counsel quarreled on the record over their discussions surrounding the plea. During their heated discussion, defense counsel challenged the veracity of Loving's statements in front of the district court judge.

These facts showed a possible conflict between Loving and defense counsel as they were proceeding with potentially adverse interests and whether Loving validly entered his plea under defense counsel's representation.

Additionally, the month before Loving's November sentencing hearing, the Kansas Supreme Court issued *State v. Hopkins*, 317 Kan. 652, 657, 537 P.3d 845 (2023), which overruled *Campbell v. State*, 223 Kan. 528, 575 P.2d 524 (1978). *Campbell* held that K.S.A. 21-4614 (later repealed and replaced with K.S.A. 21-6615) "requires a sentencing court to give a defendant credit for each day spent in jail, *solely* on account of the offense for which the defendant is being sentenced." (Emphasis added.) 223 Kan. 528, Syl. ¶ 1. As a result, "[a] defendant is not entitled to credit on a sentence for time which he has spent in jail upon other, distinct, and wholly unrelated charges." 223 Kan. 528, Syl. ¶ 2. This allocation of jail credit to *all* of a defendant's criminal cases was recently confirmed in *State v. Ervin*, 320 Kan. 287, Syl. ¶ 12, 566 P.3d 481 (2025) ("A sentencing judge should . . . allow credit for all days incarcerated on a case, regardless of whether the defendant received a credit for some or all that time against a sentence in another case."). In light of *Hopkins* and *Ervin*, reviewing the PSI report with defense counsel would have allowed Loving to discuss with his counsel the awarding of jail credit for this case and the other pending criminal cases referenced in the PSI report. Therefore, this factor greatly weighs in favor of granting a continuance.

When we balance the *Anthony* factors "in determining whether the court's conduct was fair and reasonable," at least three of the five *Anthony* factors weigh in favor of granting a continuance. See 257 Kan. 1003, Syl. ¶ 8. The district court's ruling was not fair and reasonable and, thus, the court abused its discretion in denying a continuance.

16

*K.S.A. 22-4503(b)*

The State and Loving also dispute the applicability of K.S.A. 22-4503(b), which states:

> "If such a defendant appears before any court without counsel to assist and conduct the defendant's defense, it shall be the duty of the court to inform the defendant that such defendant is entitled to counsel and that counsel will be appointed to represent the defendant if the defendant is not financially able to employ an attorney. The court shall give the defendant an opportunity to employ counsel of the defendant's own choosing if the defendant states the defendant is able to do so. If the defendant asks to consult with counsel of the defendant's own choosing, the defendant shall be given a reasonable opportunity to do so."

Loving contends that K.S.A. 22-4503(b) requires the district court to provide a reasonable opportunity for a defendant to consult counsel of his or her own choosing. According to Loving: "The district court unreasonably decided that quickly wrapping up a criminal case was more important than [Loving's] constitutional rights." The State argues that Loving misreads K.S.A. 22-4503(b). The statute applies when a defendant appears without counsel, in which case the district court must inform the defendant of their right to counsel and allow an opportunity to retain counsel if the defendant can afford to do so.

In *State v. Kirkpatrick*, 286 Kan. 329, 184 P.3d 247 (2008), *abrogated on other grounds by State v. Barlett*, 308 Kan. 78, 418 P.3d 1253 (2018), Kirkpatrick had appointed counsel, but the district court denied his request for private counsel at a suppression hearing. Our Supreme Court cited the provision of K.S.A. 22-4503(b) (Furse) requiring a "'reasonable opportunity'" for the defendant to consult counsel of his or her choice. 286 Kan. at 345. However, K.S.A. 22-4503(b) did not significantly factor into the court's analysis. 286 Kan. at 347.

17

The *Cunefare* panel also discussed a claim under K.S.A. 22-4503(b) and the Sixth Amendment right to counsel of choice. Cunefare appealed the district court's denial of his continuance request to retain counsel during his sentencing hearing. The *Cunefare* panel found the district court abused its discretion under the *Anthony* factors but did not rely on or analyze K.S.A. 22-4503(b). 2019 WL 5275638, at *6-7.

*Kirkpatrick* and *Cunefare* suggest that K.S.A. 22-4503(b)'s requirement that a defendant be given a reasonable opportunity to consult counsel of his or her choice applies even when a defendant has counsel. However, because appellate courts must analyze the district court's decision under the *Anthony* factors, interpretation of K.S.A. 22-4503(b) does not appear to be determinative of this case.

In conclusion, we find the district court's denial of Loving's request for a continuance was not "fair and reasonable," and, thus, the court did abuse its discretion. See *Anthony*, 257 Kan. 1003, Syl. ¶ 8. We reverse the district court's denial of Loving's continuance and remand for further proceedings, allowing Loving to retain counsel. See *Cunefare*, 2019 WL 5275638, at *7.

Reversed and remanded with directions.